**STATE of Missouri, Plaintiff-Respondent,**

v.

**Robert L. LARKINS, Defendant-Appellant.**

No. 35568.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Dec. 30, 1974.

Gartenberg & Gilmore, Stephen H. Gilmore, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Jefferson City, Preston Dean, Philip M. Koppe, Asst. Attys. Gen., Brendan Ryan, Circuit

Atty., John D. Chancellor, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

McMILLIAN, Judge.

Defendant, Robert Lee Larkins, appeals from a judgment of conviction entered by the Circuit Court of the City of St. Louis, Missouri, on a jury verdict, finding him guilty of manslaughter (Count I), § 559.-070, RSMo 1969, V.A.M.S., and assault with intent to kill with malice (Count II), § 559.180 RSMo 1969, V.A.M.S. Pursuant to § 556.280 the court sentenced defendant to the custody of the Missouri Department of Corrections to serve consecutively 10 years on Count I and 15 years on Count II.

For reversal defendant contends that the court erred (1) by admitting a video tape confession without defendant being sufficiently warned; (2) by submitting to the jury an instruction pertaining to the voluntariness of the confession which did not meet the Miranda test; (3) by permitting, during trial, the endorsement of witnesses contrary to Rule 24.17, V.A.M.R.; (4) by permitting the introduction of exhibits which tended to prove the perpetration of crimes other than those charged; (5) by failing to sustain his motion for judgment at the close of all the evidence; (6) by permitting inconsistent judgment between the two counts to stand; and (7) by refusing to strike the prior felony conviction.

On Saturday, September 9, 1972, defendant met his brother Freddie, who took him to a place where another brother John was being threatened by six men. When defendant attempted to assist his brother to escape, one of the men threatened him with a knife. A little later the same group of men saw defendant, fired three shots at him, and chased him up the street. After this incident, later that evening, defendant borrowed a revolver from his brother John.

On the next day defendant, while riding in an automobile, saw one of the men who had previously shot at him in front of the Big Q tavern. Defendant told the driver to pull around the corner. He got out of the car, walked through a lot to an alley and proceeded to walk eastwardly in the alley toward Vandeventer Avenue. As he walked out of the alley, he saw "Little Robert," who was the man on Saturday who had ordered that defendant and John be shot. As defendant emerged from the alley, according to defendant, Little Robert turned toward him and appeared to come right at him. Because of his apprehension of danger created by Little Robert's movements, defendant drew and fired his revolver five times at Little Robert. No witness at the scene was able to identify defendant as the man who fired the weapon.

Lieutenant Robert Truetken, who was operating a police vehicle north on Vandeventer Avenue, approaching Washington Avenue, testified that he observed a man run from the west to the east side of Vandeventer and also saw another subject run from the west side of Vandeventer and proceed east on Washington Avenue. He neither saw any shooting nor heard any shots. However, he followed the second subject, later identified as Robert Holland, and found him lying face down in front of 3851 Washington Avenue.

After Officer Truetken found Robert Holland lying on Washington Avenue, he later found out that four people had been shot at the Big Q tavern located at 611 Vandeventer Avenue. Upon his arrival at the tavern, he found Johnnie William Hawkins lying face down in the doorway. He remained at the scene until the body was removed.

Patrolman Terry McDermott conveyed the man lying in the doorway to Homer G. Phillips Hospital and was present when the doctor pronounced the subject dead. Then he conveyed the deceased to the morgue some time between 11:00 P.M. and 11:25 P.M.

Robert Holland, although unable to identify his assailant, testified that Ronnie Morris and August Robinson were present at the scene of the shooting. Also he testified that he had been present in the vicinity when shots had been fired at defendant's brother.

Betty Hawkins, the wife of the deceased, who also saw her husband at the morgue, identified pictures taken at the morgue as her husband, Johnnie Hawkins. His mother, Mrs. Frankie Hawkins, testified that she not only saw her son lying in the doorway of 611 Vandeventer but also remained with him and identified his body at the hospital.

Some confusion arose in the evidence because Dr. J. J. Thomas, the coroner's physician, testified that the picture shown him of the deceased was not the man he had performed the autopsy on. On the other hand, there was substantial evidence introduced which showed that the doctor was mistaken. Other evidence, if needed, will be set forth in the opinion.

First, we consider defendant's claim that he was not adequately advised of his rights prior to the making of the video tape confession.

■ At trial, defendant objected specifically that the police officer left the erroneous impression with the defendant that if an attorney was to be appointed for him he would be selected by the police. Since this was his precise objection at trial, he may not alter or broaden the scope of his objection on appeal, State v. Atkins, 494 S.W.2d 317, 319 (Mo.1973); State v. Davis, 482 S.W.2d 486, 489 (Mo.1972).

■ Both parties agree that the statement made on the video tape is substantially the same as the written statement given by defendant prior to the video tape statement. On this appeal there has been no challenge made to either the oral or the written statement. While we have some doubt as to whether the warnings given did not fall within the condemnation of State v. Evans, 439 S.W.2d 170 (Mo.1969), we do not rule the point, because, if error, the error was harmless. Here we find that on three prior occasions the defendant was properly advised of his rights: (1) to remain silent, and that anything he said could and would be used against him in court, and (2) to counsel, and if he could not afford an attorney one would be appointed for him and counsel would be permitted to be present during the questioning, if defendant so desired. This scenario took place twice during the initial questioning of defendant; once, by himself, at home on September 14, 1972—the second time in the presence of his father, and again at police headquarters defendant was given the above warnings prior to his giving a written statement. Consequently, when defendant, later in the evening on September 14, 1972, was given a statement of his rights, it made the fourth time in a very short period of time that his rights had been explained.

In Evans v. Swenson, 455 F.2d 291, 294–296 (8th Cir. 1972), involving the same defendant, contrary to the dicta of our Supreme Court in our Evans case, supra, the Eighth Circuit Court of Appeals, in a decision on the merits, held that the warnings given to defendant were sufficient to advise him of his constitutional rights. Also the court in Evans v. Swenson, supra, stated, " . . . the 'Miranda' warning need not be repeated in full each time the interrogation process is resumed after an interruption . . . ." See also Tucker v. United States, 375 F.2d 363, 366–369 (8th Cir. 1967), cert. denied 389 U.S. 888, 88 S. Ct. 128, 19 L.Ed.2d 189; People v. Sievers, 255 Cal.App.2d 34, 62 Cal.Rptr. 841 (1967). All told under the circumstances presented herein error, if any, is harmless; first, because the record shows on the initial occasion, by himself and later in the presence of his father, he was adequately warned of all his Miranda rights; secondly, at the police station prior to his giving a written statement he was adequately warned; and

thirdly, prior to his giving the video-taped statement once again he was warned of his right; and finally, the record shows all these warnings were given in a very short time sequence. Consequently, in our opinion, the claimed error, if so, is harmless, because the record shows that defendant was aware not only of his rights, but also of the consequences of waiving them which we find he did knowingly and understandingly; therefore, we rule this point against the defendant.

■ Inasmuch as defendant failed to set out the alleged erroneous instruction in the argument portion of his brief as required by Rule 84.04(e), V.A.M.R., we hold that defendant has failed to preserve his second point for review, State v. Mesmer, 501 S. W.2d 192, 197 (Mo.App.1973).

Thirdly, defendant claims that the court erroneously permitted the state to endorse Mrs. Helen Taylor, the coroner of the City of St. Louis; the wife, Mrs. Betty Hawkins and Mrs. Frankie Hawkins, the mother of defendant, after the commencement of the trial, Rule 24.17, V.A.M.R. He argues that none of the three were rebuttal witnesses and that the state knew of their existence. Hence, each should have been endorsed earlier.

Granted that the purpose of Rule 24.17 is to discourage the delay in the endorsement of additional witnesses, our courts often recognize that late endorsements may be permitted if they can be made without undue prejudice to the defendant, State v. Strawther, 476 S.W.2d 576, 579 (Mo.1972); State v. Cobb, 444 S.W.2d 408, 415 (Mo. banc 1969). Even defendant concedes that the trial court is vested with broad discretion in permitting late endorsements of witnesses, but he contends that in this instance the discretion was abused. We think not.

■ Obviously, Mrs. Taylor, the coroner, who identified and testified concerning official records of the deceased in her office was a witness who, under Rule 24.- 17, required no prior endorsement. State v. Arrington, 375 S.W.2d 186, 191 (Mo. 1964); State v. Malone, 301 S.W.2d 750, 756 (Mo.1957).

■ Mrs. Frankie Hawkins' testimony consisted of her finding her son lying in the doorway of the Big Q tavern, and of her being taken to the hospital where she identified her son's body. The wife testified pertaining to her identification of her husband and a picture of his body at the morgue. The testimony of these three witnesses became necessary when doubt was developed by defendant as to whether Dr. Thomas actually performed an autopsy on the body of the deceased. To meet this development no bad faith can be imputed to the state in making these late endorsements, State v. Farris, 243 S.W.2d 983, 987 (Mo.1951). Also, we find that defendant neither objected to the testimony of the witnesses at trial, nor filed an affidavit of surprise when notified of the state's planned endorsements. Finding no abuse of discretion on the part of the court, we rule defendant's third point of error against him.

For his fourth claim of error defendant contends that the trial court erred in allowing into evidence the medical records of Ronnie L. Morris and August L. Robinson. His specific objection to the introduction of the two medical records was that they were "outside the scope of the indictment." In his motion for a new trial, defendant abandoned this line of argument and instead claimed that neither Morris nor Robinson testified. On this appeal, defendant now argues that the admission of the two medical records denied him his constitutional right to confrontation and to cross-examine Morris and Robinson.

■ To properly preserve an alleged error for appellate review, an assertion of claimed error appearing in the motion for new trial and in the brief on appeal must not be a departure from the assertion of claimed error at the time the alleged error occurred, State v. Woodard, 499 S.W.2d

553, 560 (Mo.App.1973); State v. Brookshire, 353 S.W.2d 681, 688 (Mo.1962). In the instant case the defendant is trying to shift or broaden the scope of his trial objection on appeal, which is impermissible, State v. Atkins, 494 S.W.2d 317, 319 (Mo.1973); State v. Davis, 482 S.W.2d 486, 489 (Mo.1972).

In recognition of the above infirmity, defendant requests that we consider the admission of the two hospital records under our "plain error" rule, Rule 27.20(c). Specifically, he argues (1) that he has been denied the right to confront and cross-examine either Morris or Robinson, and (2) that the introduction of the two hospital records constituted evidence of other crimes.

■ While we accept the ruling of Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), that the right of cross-examination is included in the right of an accused in a criminal case to confront the witness against him, we reject its application in this case; because in our case neither Robinson nor Morris testified, therefore, no such right of confrontation ever arose. Furthermore, the admission into evidence of a properly qualified hospital record in a criminal case does not violate the defendant's right to confrontation of the witnesses against him, if the record meets the requirement of the Uniform Business Records as Evidence Act, §§ 490.-660 et seq., 490.680, RSMo 1969, V.A.M.S.; State v. Durham, 418 S.W.2d 23, 31 (Mo. 1967).

■ A simple answer to defendant's second thrust that the hospital records constituted evidence of other crimes, is that defendant should have committed one felony at a time. Nonetheless, the shooting of Morris and Robinson was so interwoven and inextricably connected with the assaults upon the deceased and Robert Holland that it would have been impossible to tell the story of the latter assaults without some evidence of the former coming in. State v. Cooksey, 499 S.W.2d 485, 488

(Mo.1973). Here the evidence revealed that all four men were shot at the same location as the result of a series of shots fired by defendant in a span of a few seconds. In State v. Hendrix, 310 S.W.2d 852, 855 (Mo.1958) quoting approvingly from State v. Garrison, 342 Mo. 453, 116 S.W.2d 23, 25 (1938), the court stated, ". . . 'Evidence covering the commission of other offenses is admissible when two or more crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other . . .'"

■ Where such circumstances exist, the separate acts of the defendant are considered to be a part of the res gestae of the crime charged, and the state is not required nicely to sift and separate the evidence and to exclude the testimony in evidence tending to prove the crime for which the accused is on trial, State v. Shumate, 478 S.W.2d 328, 330 (Mo.1972). A case in point is State v. Bell, 359 Mo. 785, 223 S. W.2d 469 (banc 1949). There the defendant was convicted of murder in the shooting of a police officer, a shooting that triggered a gun battle in which two other officers were killed and several other persons wounded. In rejecting defendant's complaint that such evidence showed other crimes for which he was not on trial, the court said, "This evidence was properly admitted as a part of the res gestae. It did not relate to separate and distinct crimes, but parts of a continuous occurrence intimately connected with the crime for which defendant was being tried." Consequently, if the hospital records are admissible for legitimate reasons, then defendant's request that their introduction into evidence be considered as "plain error" is unavailing. So, we rule this point against defendant.

■ For defendant's fifth assignment of error, he claims that there was a failure of proof as to the identity of the body at the morgue from which the pellet was removed. While there was some conflict or confusion because of the testimony of the

coroner's physician who performed the autopsy we find sufficient evidence to establish that the body examined was, in fact, that of the deceased, Johnnie Hawkins. This for the reason that the pellet removed from the body examined by Dr. Thomas was subsequently examined by Paul Reeder, a fire-arm identification expert for the St. Louis Police Department. Officer Reeder testified that in his opinion the pellet taken from the body of Johnnie Hawkins, and examined by him was fired from a Harrington and Richardson .22 caliber revolver. The weapon he used to make the test was found and seized at the home of Fred Moore, defendant's brother. Defendant himself told the officers where the gun could be found and defendant also identified the gun as the one he used to shoot the deceased, Robert Holland and the others. This evidence alone, i. e., the positive identification of the pellet removed from the deceased's body as having been fired from defendant's gun, is sufficient to identify the body upon which the autopsy was made as that of the deceased Johnnie Hawkins, State v. Hale, 371 S.W.2d 249, 259 (Mo.1963).

■ Defendant's next argument that the jury's verdicts are inconsistent is without merit. This argument is bottomed on the premise that since both charges arose out of the same transaction, a jury verdict cannot stand which permits a finding of that he acted with malice with respect to the assault upon Holland, but that he did not act with malice in fatally assaulting the deceased. Defendant's argument fails because he was charged with separate offenses in two counts contained in one information. Each count contained different elements and involved different victims. In fact, even if defendant had been acquitted altogether on one of the two counts, he would have no cause to complain, since where a defendant is charged with the commission of two criminal offenses that involved different elements a jury may find him guilty of one crime and acquit him of the other, State v. Thomas, 452 S.

W.2d 160, 164 (Mo.1970); State v. Burns, 263 Mo. 593, 173 S.W. 1070, 1071 (1905). A jury could have properly found because of an earlier altercation he had had with "Little Robert" and several companions, defendant had gone looking for Holland with the express purpose of shooting him, and, therefore, the resulting assault on Holland was committed with malice aforethought, State v. Brager, 497 S.W.2d 181, 182 (Mo.1973).

On the other hand, the jury could have found that the assault upon the deceased was without malice or premeditation because defendant himself testified that the assault upon Hawkins had not been premeditated. Indeed, defendant said he did not even know Hawkins, and that Hawkins was shot only because he ran in front of "Little Robert." Consequently, a jury could properly have concluded that the shooting of the deceased had been unjustifiable, inexcusable and intentional, which would support a conviction of manslaughter.

■ In any event, the principle is firmly established that inconsistency in a verdict, on separate counts of an indictment, is not fatal, Canaday v. United States, 354 F.2d 849 (8th Cir. 1966). The position of the Eighth Circuit was derived from earlier decisions of the United States Supreme Court, notably Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). In Dunn, Mr. Justice Holmes stated, "Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment . . . That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters."

■ Finally, we find no merit to defendant's claim that the court erred in ruling the Second Offender Act, § 556.280, RSMo 1969, V.A.M.S., was applicable to him, because his guilty plea in 1969 pertained to a juvenile offense. Here the rec-

ord shows that defendant pleaded guilty in the Circuit Court of Cooper County, Missouri, for the offense of tampering with a motor vehicle, a felony and that the court sentenced him to serve two years in the custody of an institution to be designated by the Department of Corrections. Obviously, a juvenile court is not empowered to commit a juvenile to the custody of the Department of Corrections or to any other institution which that department operates, Boone v. Danforth, 463 S.W.2d 825, 828 (Mo. banc 1971); § 211.181, RSMo 1969, V.A.M.S. Also, defendant's testimony refutes his own claim, because he admitted that he had been certified (sic) to stand trial as an adult on the automobile tampering charge.

■ His second claim under this same heading stems from the fact that the state exhibits, a copy of the sentence and judgment, revealed that a "Robert Larkin," not "Robert Larkins" pleaded guilty in the Circuit Court of Cooper County, Missouri, to a charge of tampering with an automobile, and received a two year sentence on August 25, 1969. However, a transcript of the certified serial record of a "Robert Lee Larkins" indicated that a prisoner by that name was received by the Department of Corrections on August 26, 1969, pursuant to a two year sentence imposed on August 25, 1969, in Cooper County for the offense of tampering with a motor vehicle. Additionally, defendant has not attempted to retract the admission he made at trial, and is not claiming on this appeal that he is not, in fact, the "Robert Larkin" or the same "Robert Lee Larkins" who pleaded guilty to the prior offense. Also, our examination of the serial record shows a detailed physical description of the defendant, which the court could have used to make a comparison had there been any doubt that the "Robert Larkin" identified in the certified copy of the judgment record and the "Robert Lee Larkins" identified in the certified transcript of the serial record, were one and the same person as defendant, State v. Cook, 463 S.W.2d 863, 868–869

(Mo.1971); State v. Wraggs, 496 S.W.2d 38, 41 (Mo.App.1973). Consequently, the court had substantial evidence on which to base its conclusion that "Robert Larkin" and "Robert Lee Larkins" was the same Robert L. Larkins on trial.

Judgment affirmed.

SIMEONE, P. J., and GUNN, J., concur.