STATE of Missouri, Plaintiff-Respondent,

v.

Leon GILBERT, Defendant-Appellant.

No. 37232.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Nov. 16, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Dec. 20, 1976.

---

David V. Uthoff, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

NORWIN D. HOUSER, Special Judge.

Leon Gilbert appeals from a judgment of conviction entered upon a jury verdict finding him guilty of Attempted Burglary Second Degree.

In the early morning hours of March 2, 1975 police officers were dispatched to 4651 Dr. Martin Luther King Drive in the City of St. Louis to answer an alarm that was sounding at that address. They observed that the locks to the door at 1502 Marcus Street (on the side of the building) were

missing; that there were newly created markings on the door and wood chips in the doorway and on the ground. Officer Henderson pushed open the door at 1502 Marcus and observed someone wearing dark clothes running up a flight of steps to the second floor. On the inside of the entrance there was a big hole in the wall of the stairway. Debris and an iron pipe were on the floor near the hole. Located on the other side of the wall was Best Candy and Tobacco Company, which occupied the entire first floor of the building. On the previous evening, when the owner of the candy-tobacco company left the building, there was no hole in the wall, and the doors had been locked. Upon arrival of other policemen, Officers Henderson and Wagner conducted an investigation of the vacant apartment on the second floor. In one room the officers found one Robert Jones. A crowbar with bits of plaster on both ends was also found in that room. In the next room officers found appellant and one Sylvester Taylor hiding inside a closet behind some theatre seats, hunched down in a crouched position, with their hands attempting to cover their faces. All three subjects were arrested. All three had cement-type debris on their clothing. A criminologist testified that the debris on Taylor's clothing was of the same color and consistency as the plaster taken from around the hole in the wall, but she did not find a sufficient quantity of plaster on appellant's clothing to compare with the plaster taken from around the hole.

After the State closed its case defense counsel asked that Officer Henderson be recalled for further cross-examination "with regard to the plaster, the comparisons; Officer Henderson was so sure they could have been matched. But Miss Ruemmler [the criminologist] indicated they could not be, were not susceptible of a match. And, further, I want to make a circumstantial inquiry into the ages of the defendants." The State objected on the ground that counsel for the defendant had had ample opportunity to cross-examine the officer at the time he testified. The court sustained the objection and the witness was not recalled.

Appellant did not testify or offer any evidence.

■ Appellant's first point is that the court erred in refusing to give the second paragraph of MAI–CR 2.10 as a part of Instruction No. 6, for stated reasons. Appellant has failed to set forth in full Instruction No. 6 in the argument portion of his brief, as required by Rule 84.04(e), as a consequence of which he has failed to preserve this point for appellate review. *State v. Larkins*, 518 S.W.2d 131, 135[3] (Mo.App. 1974); *State v. Mesmer*, 501 S.W.2d 192, 197[12] (Mo.App.1973).

■ Appellant's second point is that the court erred in overruling his objection to testimony regarding a burglary at 1502A Marcus (that the doors leading into that address were broken, i. e., the street door and the door at the top of the steps leading into the vacant apartment) because this was proof of other crimes for which appellant was not on trial (the charge on which appellant was tried being attempted burglary of Best Candy and Tobacco Company). Appellant urges that this tended to confuse the jury and resulted in finding him guilty of the crime charged because of the proof of these other crimes. There is no merit in this contention. Proof of breaking and entering the downstairs door at 1502 Marcus was a necessary part of the proof of appellant's attempt to enter the candy-tobacco company store by making a hole in the wall in the entryway and entering the candy-tobacco store through that hole. Proof of breaking the door at the top of the stairway was a necessary part of the proof of appellant's entry into the upstairs apartment in the course of flight from the immediate scene, and concealment from detection and apprehension. This evidence was admissible as a part of the res gestae. It related to links in a chain of occurrences so intimately and necessarily connected with the crime charged as to be part and parcel of the proof of attempted burglary of the candy-tobacco store. *State v. Bell*, 359 Mo. 785, 223 S.W.2d 469, 471[1] (banc 1949). " 'Evidence covering the commission of other of-

fenses is admissible when two or more crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other. * * * ' " *State v. Garrison*, 342 Mo. 453, 116 S.W.2d 23, 25 (1938); *State v. Hendrix*, 310 S.W.2d 852, 855 (Mo.1958); *State v. Larkins*, 518 S.W.2d 131, 136[10] (Mo.App. 1974).

Appellant's third point is that the court erred in allowing the circuit attorney during final argument to orally instruct the jury by defining reasonable doubt; that it is improper to define reasonable doubt; that the circuit attorney's erroneous definitions shifted the burden of proof to appellant and minimized the State's burden of proof. On this appeal counsel for appellant paints with a broader brush than that used in the trial court. There he made no objection—failed to take exception in the trial court—to that part of the circuit attorney's argument pertaining to the question of reasonable doubt, but on appeal he argues forcibly against the circuit attorney's statements. At the trial counsel for appellant sat mute throughout the circuit attorney's discussion of reasonable doubt, and waited to object until the circuit attorney made this statement: "Now, I think what this boils down to, and I think perhaps you will agree with me, putting all the legal terms aside, it boils down to a question of common sense." Appellant's specific objection follows: "Objection; reasonable doubt is not common sense; not now and never has been." The trial judge commented, "It's final argument, gentlemen." Thereupon the prosecutor continued: "What you have to do, ladies and gentlemen, is in terms of common sense, and the terms of reasonable doubt is ask yourself, now that I've heard all of the evidence, now that I've heard everything the State is going to bring forth, I have to ask myself, is the evidence that the State has shown, is it reasonable, is it logical, is it consistent with the other evidence you've heard; does it just boil down to make good old common sense. That, ladies and gentlemen, is really what the issues of this case boil down to."

This point is disallowed. Appellant's precise objection at trial was to the use of the term "common sense" in connection with the subject of reasonable doubt. Appellant may not alter or broaden the scope of his objection on appeal. *State v. Larkins*, supra, 518 S.W.2d l. c. 134[1], and Supreme Court cases cited. Accordingly, we decline to review appellant's present complaints about the circuit attorney's references to reasonable doubt, which were not the subject of an objection at trial, and were not brought to the trial court's attention in the motion for new trial. We confine our consideration to the question whether the circuit attorney went beyond permissible limits in his reference to common sense. We disagree with appellant's conclusion that the prosecutor was saying that "reasonable doubt amounts to common sense" and that the prosecutor was improperly "instructing the jury that it [was] their duty to convict if the case [made] common sense." Considering what he said at the time the objection was made in the context of his preliminary remarks, we interpret the argument to mean that the issues were reduced to the question whether, considering the evidence and issues as a whole, and looking at the case in the exercise of their common sense, there was a reasonable doubt in their minds as to the guilt of the defendant. This involved no shifting or minimizing of the State's burden of proof. Many if not most cases boil down to a question of common sense. "Common sense does not always make law, but law and common sense are likely to be one and the same unless divorced and thereby violently put asunder by lawmaker or judge." Lamm, J., in *Third Nat. Bank v. St. Charles Savings Bank*, 244 Mo. 554, 149 S.W. 494, l. c. 499–500 (1912). We decline to take a stand against common sense or question its employment in the determination of jury issues, whether the issue be reasonable doubt of guilt or any other determination. "While not ideally perfect, yet, having been brayed in the mortar of experience with the pestle of common sense, as human institutions run, trial by jury has stood the test of use and justifies itself as indispensable."

Lamm, C. J., in *Whiteaker v. Chicago, R. I. & P. R. Co.*, 252 Mo. 438, 160 S.W. 1009, l. c. 1012 (1913). The trial judge considered the argument unexceptional and we concur in his assessment.

Appellant's final point is that the court erred in not allowing him to recall Officer Henderson for further cross-examination to further test the credibility of the officer as to the amounts of powdery plastic-like substance found on appellant's clothing, and develop the ages of the three persons arrested for the purpose of drawing an inference that it was not reasonable that the 17-year-old defendant would be a joint participant with Jones and Taylor, each of whom was 35 years of age.

We find no error in the trial court's ruling. We have read Officer Henderson's testimony in the light of Criminologist Ruemmler's subsequent testimony, and find nothing in the testimony of the criminologist which could be used to impeach the testimony of the officer, so there was no error in refusing to recall the officer for the announced purpose of impeachment. With respect to evidence of discrepancy in ages, there was nothing to prevent cross-examination of the officer on this subject when he was on the stand, nor was there anything to prevent appellant from making independent proof of the age discrepancy, without himself taking the stand. Whether to allow recall of witnesses for impeachment purposes is a matter within the discretion of the trial court, *State v. Neal*, 350 Mo. 1002, 169 S.W.2d 686, 696[17] (1943); *State v. Langston*, 515 S.W.2d 852, 854[2] (Mo.App.1974), and we find no abuse of discretion in the ruling.

Judgment affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.