Leslie Allen SANDERS, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 10362.

Missouri Court of Appeals, Springfield District.

Sept. 19, 1977.

John C. Danforth, Atty. Gen., David L. Baylard, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

Movant Leslie Allen Sanders appeals from a denial, after evidentiary hearing, of his Rule 27.26 V.A.M.R. motion to set aside a judgment and sentence for murder in the second degree. Sanders was one of three persons charged with robbing, kidnapping and murdering James Stemmons. Movant was convicted by a jury of the first degree murder of Stemmons. The verdict was set aside by the trial court on the ground of instruction error. Thereafter, on August 4, 1975, attorney William Fleischaker, the public defender of Jasper County, was appointed to represent Sanders.

On September 9, 1975, in the murder case, the state filed an amended information reducing the charge to murder in the second degree. On that date Sanders, represented by Fleischaker, entered his plea of guilty to the amended charge. On September 11, 1975, the state dismissed the kidnapping charge and the robbery charge. On October 14, 1975, movant, represented by Fleischaker, received a life sentence imposed by Judge Robert P. Warden.

The instant motion was filed on December 10, 1975. An evidentiary hearing on the motion was held before Judge Warden on April 15, 1976. Movant was present at that hearing and was represented by attorney Robert P. Baker, who had represented him at the jury trial. At the conclusion of the hearing Judge Warden, after making findings of fact and conclusions of law, overruled the motion.

Movant appealed to this court. On February 4, 1977, this court entered an order remanding the cause to the circuit court "for the limited purpose of affording movant-appellant and the state, if they so desire, opportunity to adduce additional testimony and evidence of the particular elements and conditions of all plea bargainings conducted between the public defender on behalf of movant and the state, with particular reference to whether the state satisfied

Robert P. Baker, Sarcoxie, for movant-appellant.

and performed all things it may allegedly have agreed to do in exchange for movant's plea of guilty to the charge of second degree murder."

On April 6, 1977, an evidentiary hearing was held before Hon. Herbert C. Casteel (who had replaced Judge Warden as Judge of Division I of the Circuit Court of Jasper County). Movant appeared in person and by attorney Baker. On April 8, 1977, Judge Casteel made findings of fact and conclusions of law, in compliance with the order of this court.

Although both sides were accorded the privilege of filing supplemental briefs based on the transcript of the hearing before Judge Casteel, neither side exercised that privilege and this appeal is predicated upon the original briefs.

■ Movant's first point is that the trial court erred in refusing to vacate and set aside the sentence because "the court's finding of fact that there was no plea bargain whereby charges of robbery and kidnapping would be dismissed in return for a plea of guilty was clearly erroneous in light of the uncontradicted testimony by all involved that there was in fact such a plea bargain."

This point is based upon movant's misinterpretation of a portion of the findings made by Judge Warden. That portion reads: "The court finds that Mr. Fleischaker did not tell the defendant that he would get ten years in the penitentiary if he entered his plea of guilty to second degree murder, and that the charges of robbery and kidnapping would be dismissed against him. The court finds there was no such agreement. The court finds that neither the prosecuting attorney nor his assistants ever made such an agreement with Mr. Fleischaker nor conveyed such an agreement to Mr. Fleischaker as attorney for the defendant."

The evidence adduced at both hearings showed that the state and attorney Fleischaker entered into a plea agreement on the following terms:

1. The state would file an amended information reducing the murder charge from first degree murder to second degree murder and Sanders would enter a plea of guilty to the amended charge.

2. The state would dismiss the robbery and kidnapping charges.

3. The state would not oppose a presentence investigation.

4. The state would make no recommendation as to the sentence on the second degree murder conviction.

The evidence shows that the state performed all of its promises under the plea agreement.

It is true that Sanders (who did not testify at the motion hearing before Judge Warden) had alleged in his motion that the plea agreement included the provision that Sanders "would get 10 years for a plea of guilty" to the second degree murder charge. At the motion hearing before Judge Casteel, Sanders so testified. Such testimony was in direct conflict with that of attorney Fleischaker and that of the assistant prosecutor Ross T. Roberts (both called by movant). The attorneys testified, and Judge Casteel found, that the plea bargaining agreement contained no provision with respect to a 10-year sentence.

In a Rule 27.26 proceeding "the weight of the evidence and credibility of the witnesses are matters for the trial court. Our function is to determine whether the judgment of the trial court was 'clearly erroneous.'" *Shoemake v. State*, 462 S.W.2d 772, 775[2, 3] (Mo. banc 1971).

Movant's brief construes Judge Warden's finding, quoted above, to be equivalent to a finding "that there was no plea bargain whereby charges of kidnapping and robbery would be dismissed in return for a plea of guilty and [the state] never made such an agreement." A fair construction of Judge Warden's finding is that there was no plea agreement which included a provision that movant would receive a 10-year sentence. Such finding, which Judge Casteel also made, was clearly supported by the evidence.

Movant's first point has no merit.

Movant's second point is that Judge Warden's finding that Mr. Fleischaker "adequately represented movant was clearly erroneous in that counsel's misapprehension of the law of duress in the state of Missouri, resulting in the giving of improper legal advice, rendered counsel ineffective and deprived movant of his right to assert that defense, and counsel was further ineffective in failing to insist upon the plea bargain."

■ Significant misleading advice of counsel may constitute a denial of due process of law and vitiate a judicial proceeding. *Ray v. State*, 532 S.W.2d 478, 482[9] (Mo. App.1975) (citing authorities).

■ Movant's brief, referring to *State v. St. Clair*, 262 S.W.2d 25 (Mo.1953), says: "*St. Clair* held that where from the evidence a jury could have found that the accused participated in a robbery not of his own volition, but rather, because of a well grounded fear of present, imminent and impending death or serious bodily injury, it was mandatory that the jury be instructed upon the issue of duress. But in the present case, [Mr. Fleischaker] clearly conveyed to his client that the trial court would not be obliged to instruct upon duress. In so doing, defense counsel was mistaken in law and therefore, ineffective."

In *St. Clair*, which was a robbery case, the court said at p. 27:

"The appellate courts of this State seem not to have dealt with duress or coercion as a defense to an otherwise criminal act. At least, we have not been cited nor have we found any such case. However, the question has been considered with some frequency in other jurisdictions. Numerous cases are cited in Wharton's Criminal Law, Vol. 1, § 384, p. 514. From these cases and others cited below it is established by the great weight of authority that although coercion does not excuse taking the life of a innocent person, yet it does excuse in all lesser crimes. *Nall v. Commonwealth*, 208 Ky. 700, 271 S.W. 1059; 15 Am.Jr., Criminal Law, § 318, p. 16. But, to constitute a defense to a criminal charge, the coercion must be present, imminent, and impending and of such a nature as to induce a well grounded apprehension of death or serious bodily injury if the act is not done. Threat of future injury is not enough. Nor can one who has a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily injury invoke the doctrine as an excuse."

Movant's brief is neither fair nor accurate in stating that Mr. Fleischaker "clearly conveyed to his client that the trial court would not be obliged to instruct upon duress."

Mr. Fleischaker testified that he discussed with Sanders the "factual and legal" aspects of the defense of duress. Mr. Fleischaker said that he told movant "that although apparently the court had allowed the duress defense in the first trial, I had some question as to whether we were legally entitled to it and that if the court determined not to give a duress instruction to the jury, we would be stuck in a very difficult situation."

That testimony does not support movant's construction of Mr. Fleischaker's advice. Mr. Fleischaker did not "clearly convey" to his client that the trial court would not be obliged to instruct upon duress. Mr. Fleischaker said that he "had some question as to whether we were legally entitled to such an instruction."

Moreover, the record shows that on September 22, 1975, a hearing was held before Judge Warden where the movant appeared in person and by Mr. Fleischaker. This occurred between the acceptance of the plea and the imposition of the sentence. At that hearing the following took place:

"THE COURT: All right, this is Case Number 14704, Mr. Sanders, when you were previously here before me on the 9th day of September, the state filed an amended information charging you with second degree murder and you entered a plea of guilty to that charge. Now at that time I did not inquire from you about the defense which you asserted in the first jury trial that was held that you were coerced into doing this act by virtue of threats made against you

and your family by your brother-in-law, John Martin. Is it John Martin?

MR. FLEISCHAKER: Yes.

THE COURT: Now, at this time, I would inquire from you as to whether or not you are now telling the Court that you in fact were not coerced in doing this and did in fact do it willingly and freely without any coercion on the part of Mr. Martin?

THE DEFENDANT: Yes, that's correct.

MR. FLEISCHAKER: Your Honor, may I address the Court on Mr. Sanders' behalf? I discussed this with him previously this morning, having been advised what the Court was concerned about, about it. Mr. Sanders told me that there was some amount of pressure put upon him from John Martin however, he's thought about it and he feels that there was not so much coercion that he could not—there was no time but what—where he couldn't have backed out of it; there were certain threats but he was acting on his own, he was acting solely on his own, he was not acting solely because of those threats by Mr. Martin and he could have backed out at any time; he would have taken his chances with Mr. Martin and as far as the defense of coercion is concerned, although there was some coercion from Mr. Martin, there at the time was not certainly enough coercion to keep him from backing out if he wanted to do it.

THE COURT: You have heard the statement made by your attorney, is that a correct statement of your position?

THE DEFENDANT: Yes, sir.

THE COURT: All right, that's all. Thank you very much." [1]

The foregoing record reflects that both Judge Warden and Mr. Fleischaker meticulously respected movant's legal rights with regard to the potential defense of duress. By movant's own statements at the September 22, 1975, hearing it is plain that Mr. Fleischaker was justified in "having some question" as to whether the evidence at a second trial would support the giving of an instruction on duress.

The second prong of movant's second point is that Mr. Fleischaker "was further ineffective in failing to insist upon the plea bargain." The contents of the plea agreement have been set forth and the fact is, as Judge Casteel found, that the state performed all of its promises under the plea agreement.

Movant's second point has no merit.

■ Movant's third point is: "By taking into account the verdict of the jury on the previous trial, as prompted by the prosecution in violation of the plea bargain, the sentencing judge both penalized the defendant for exercising his right to a jury trial and deprived him of the benefits of his plea bargain."

During the pendency of the charges against Sanders, the prosecuting attorney was William H. Burden, Jr. Ross T. Roberts, assistant prosecuting attorney, was "primarily in charge of the prosecution of Sanders." The plea agreement was reached between Mr. Roberts and Mr. Fleischaker.

On September 9, 1975, when the plea was entered to the reduced charge, the state was represented by Mr. Burden and Mr. Roberts was not present. After the plea had been accepted Mr. Fleischaker asked the court to order a presentence investigation. The court (unaware of the plea agreement) asked Mr. Burden to comment on the request. The following ensued:

"MR. BURDEN: Your Honor, the only thing I have to say on that point is, a jury of Jasper County citizens—

MR. FLEISCHAKER: Now, Your Honor—my understanding is that, with Mr. Roberts and Mr. Burden yesterday, that the state would not oppose—would not go on record either way on a presentence investigation. If I have a misunderstanding of what was said—

MR. BURDEN: Mr. Roberts is not here today and I am here, and unfortunately I

---

[1]. Peculiarly and inexcusably movant's brief makes no mention of the September 22, 1975, hearing.

have not had an opportunity to communicate with him, but if that is what your understanding was with him, I will not say anything."

Immediately after sentencing the defendant to life imprisonment, on October 14, 1975, Judge Warden said:

"Now let me say this if this defendant is subject to rehabilitation we have got a real good parole system in Jefferson City and he will have an opportunity to show them he is entitled to be rehabilitated and released. This defendant was convicted of first degree murder by 12 of his peers in this county. The only reason and the sole reason the motion for new trial was granted was not because of failure of any evidentiary material or matter presented but because the court made an error in instructing the jury. Without going into great detail about that it appears to me all the facts and circumstances in the case warrants the punishment inflicted by the court. That's all."

Mr. Burden's comment (innocently solicited by the court) on the request for a presentence investigation was interrupted (and properly so) by Mr. Fleischaker. Manifestly that comment, which was promptly withdrawn by Mr. Burden, had no adverse effect upon the ordering of a presentence investigation because one was ordered and conducted.

In response to a request by movant that he determine whether the state "adhered both to the letter and the spirit of the plea bargain," Judge Casteel found that the state did so. The record supports that finding.

Movant argues that Judge Warden penalized the defendant "for exercising his right to a fair trial by taking into account the verdict of the jury on the previous trial." It is true that Judge Warden, after imposing sentence, mentioned the fact, and certainly it was a fact, that the defendant had been convicted of murder in the first degree by a jury. It is also a fact that the verdict, which was set aside, imposed a life sentence. Judge Warden, having presided over the jury trial, was aware of the evidence there adduced and the verdict which was

returned. However, Judge Warden's reference to the jury verdict does not demonstrate that he, as the sentencing judge on a plea of guilty, felt bound by the jury's assessment of punishment or in any way abdicated his judicial responsibility.

At the Rule 27.26 hearing, over which he presided, Judge Warden said: "The court will state for the record that upon sentencing of this defendant, the court, as the transcript of the proceedings will state, made this statement, 'This defendant was convicted of first degree murder by 12 of his peers in this county' and that statement was made by the court to reflect the fact that the credibility of the defense of coercion was ruled upon by 12 persons as not being a correct defense, or one which they felt as a practical matter was available to this defendant. The court will further state that upon hearing the testimony in the case that was tried to the jury, the court did not believe the testimony of the defendant that he was coerced, nor the testimony of any other witness that bore on that defense; the court as a practical matter did not feel from listening to the evidence that the defendant was coerced and that was the primary reason for making reference to the jury's verdict. The court's verdict was based on all the factors in this case, the court did not believe as I indicated earlier, that this defendant was coerced in doing the activities which resulted in the death of Mr. Stemmons. The court felt that the defendant was an active participant in the entire proceedings from start to finish, willing participant and that he shared in the proceeds of the robbery, willingly shared in the proceeds of the robbery and never once made any effort to act consistently with being coerced. The court had benefit of the presentence report and took matters stated therein into consideration at the time of sentence."

Judge Casteel found as a fact that "nothing said by [Mr. Burden] had any bearing on Judge Warden's" assessment of the punishment. That finding is supported by the record.

The record fails to show that the verdict of the jury was the governing, or even a contributing, factor in influencing Judge Warden's determination of the appropriate sentence.

Movant's third point has no merit.

The judgment is affirmed.

All concur.