STATE of Missouri, Respondent,

v.

James VOYLES, Appellant.

No. 38332.

Missouri Court of Appeals,
St. Louis District,
Division One.

Jan. 17, 1978.

E. D. Lofftus, Fenton, for appellant.

John Ashcroft, Atty. Gen., Nanette Laughrey, Asst. Atty. Gen., Jefferson City, for respondent.

McMILLIAN, Judge.

Defendant James Voyles appeals from a judgment entered upon a jury verdict finding him guilty of robbery in the first degree, §§ 560.120, 560.135 RSMo 1969, in the circuit court of Jefferson County. Defendant was sentenced to a five-year term of imprisonment.

For reversal defendant contends that the trial court erred by (1) making improper comments to the jury, (2) misleading and confusing the jury so as to permit it to return inconsistent verdicts, and (3) improperly polling the jury and compelling it to continue to deliberate. For the reasons discussed below, we affirm.

Because defendant does not question the sufficiency of the evidence we shall set forth only that evidence necessary for our decision. From the evidence presented the jury could have reasonably found that prior to 10:00 P.M., on December 16, 1975, John Crisl, Randy Cleveland and defendant had discussed an armed robbery. After they discovered that their first selected business establishment was closed, they selected the APCO Service Station. Defendant, who

was driving the car, dropped off Cleveland in the vicinity of the service station. Cleveland took with him a ski mask, a shotgun and a pillow case. A few minutes later Cleveland returned wearing the ski mask and carrying the shotgun and the pillow case which was filled with money. Crisl said that Cleveland, upon his return, told him that, "he had to hit the lady two or three times so she couldn't use the phone." Later the three divided the money; each received about sixty dollars.

Although the victim was unable to identify the robber, she did testify that an armed, masked man carrying a shotgun struck her and took approximately $180.00.

On the basis of the above evidence defendant was charged, in separate informations which were later consolidated, with armed robbery and assault with intent to do great bodily harm, § 559.180, RSMo 1969. The jury found defendant guilty of robbery (Count II) but not guilty of assault (Count I).

The trial court began the case and finished the evidence, instructions and arguments on May 25, 1976. At 6:30 P.M. that same day the jury began its deliberations. At 10:30 P.M. the jury advised the bailiff that they were ready to return to the courtroom. The jury informed the trial court that it could not agree upon a verdict. The trial court then inquired whether they had been able to agree upon a unanimous verdict, " . . . for either guilt or innocence . . . ?" Subsequently the trial court found that the jury stood nine and three on both counts. The trial court then read the "hammer instruction," MAI–CR No. 1.10, and further instructed the jury to resume its deliberations at 11:03 P.M. At 12:30 A.M. (May 26, 1976), the jury returned to the courtroom. Once again the trial court inquired whether it had been able to arrive at a "verdict on guilt or innocence?" Being informed that the jury had not been able to reach a verdict, the court excused the jury to go home at 12:40 A.M.

The jury resumed its deliberations at 10:10 A.M., the next morning, May 26, 1976.

At 10:45 A.M., the jury requested the instructions in the case and a transcript of defendant's testimony. The trial court advised the jury that defendant's testimony was unavailable because no transcript had been prepared. The trial court did send down the instructions. The trial court also noted that through inadvertence it had earlier that morning, at 10:10 A.M. given the jury the wrong set of instructions, i.e., MAI–CR 1.02, 2.20, 1.06 and 1.08.

At twelve noon the jury returned to the courtroom and, in answer to the inquiry of the trial court whether they had reached a verdict on guilt or innocence, the foreman informed the trial court that it had reached a verdict on Count I (assault), but not on Count II (robbery). The foreman, however, informed the trial court that they were close to a verdict on Count II and requested to be allowed to continue deliberations. At 12:25 P.M., the jury returned with its verdict, finding defendant not guilty of Count I (assault) but guilty of Count II (robbery).

The crux of defendant's argument is that the trial court intimated to the jury by asking if it had arrived at a "verdict of guilt or innocence" that it was to find defendant guilty unless it was able to agree unanimously on his innocence. In other words, defendant argues that instead of using the word "innocence," the trial court should have used the words "not guilty" and, by failing to do so, the trial court negated defendant's presumption of innocence. Granted, it would have been preferable if the trial court had used the words "not guilty." Yet, we refuse to condemn the trial court's choice of words as error because any reasonably intelligent juror would know that innocence is freedom from guilt. In fact, each of the verdict directors importuned the jury either to find defendant guilty if all of the elements of the crime charged were present or to find defendant not guilty. In reference to the assault charge the jury did find defendant not guilty. Thus, we find no validity in this allegation of error.

■ Included as part of defendant's first claim of error, he alleged that the trial court had deprived the jury of its written instructions for seven hours. This claim of error is not sustained by the record. From the record it appears and the trial court freely admits, that on the second day of trial the jury was inadvertently given only those instructions that the trial court read to them at the commencement of the trial. This set of instructions included MAI–CR 2.20, the burden of proof instructions. This mistake was corrected within forty-five minutes. While we will concede that this was irregular, we find no prejudicial error in this regard.

■ Defendant's second allegation of error is that the verdicts are inconsistent, i.e., the verdicts found him guilty of the robbery but not guilty of the assault. In *State v. Larkins*, 518 S.W.2d 131, 137 (Mo.App.1974), citing with approval *Canaday v. United States*, 354 F.2d 849 (8th Cir. 1966), we held that inconsistency in verdicts on separate counts of an indictment was not fatal. We noted that the Eighth Circuit's position was fashioned after an earlier decision of the United States Supreme Court, *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). In *Dunn*, Mr. Justice Holmes stated:

> "Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.
>
> \*     \*     \*     \*     \*     \*
>
> "That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." (*Id.* at 393–94, 52 S.Ct. at 190 (citations omitted))

Here, as in *Larkins, supra*, the prosecution proceeded upon separate counts. Yet, in any event, we find no inconsistency in the verdicts because in *State v. Amerson*, 518 S.W.2d 29, 32 (Mo.1975), citing *State v. Thomas*, 452 S.W.2d 160, 164 (Mo.1970), our supreme court declared, " . . . [w]hen a defendant is charged with committing two criminal offenses that involve different elements, a jury may find him guilty of one crime and acquit on the other charge . . . .' " Not only are the elements of robbery and assault not identical, but from the evidence presented, a jury could have reasonably concluded that the assault was not committed in furtherance of the robbery or that defendant did not encourage or aid Cleveland to commit the assault.

■ Finally, while the author of this opinion is no proponent for the submission of the so-called "hammer instruction,"[1] MAI–CR 1.10, we find no abuse of discretion by the trial court in its submission to the jury under the circumstances shown herein. Moreover, not only has our supreme court sanctioned the "hammer instruction," *e.g., State v. Smith*, 431 S.W.2d 74 (Mo.1968); *State v. Baker*, 293 S.W.2d 900 (Mo.1956), but also the trial court in this case scrupulously followed the Notes on Use suggested by the court. Because we find neither coercion, *e.g., State v. McAllister*, 468 S.W.2d 27 (Mo.1971), nor any attempt by the trial court to obtain an indication of the result favored, *e.g., State v. Talbert*, 454 S.W.2d 1 (Mo.1970), we reject this claim of error.

Accordingly, judgment affirmed.

CLEMENS, P. J., and SMITH, J., concur.

---

1. The "Allen" or "dynamite charge" (as it is called in California) was disapproved by the California Supreme Court in *People v. Gainer*, 19 Cal.3d 835, 139 Cal.Rptr. 861, 566 P.2d 997 (1977). *Accord, United States v. Thomas*, 146 U.S.App.D.C. 101, 449 F.2d 1177 (1971); *United States v. Fioravanti*, 412 F.2d 407 (3d Cir. 1969); *United States v. Brown*, 411 F.2d 930 (7th Cir. 1969). The instruction has been disapproved in 22 states. *See e.g., Kersey v. State*, 525 S.W.2d 139 (Tenn.1975); Annot., 18 ATLA News L. 481 (1975). *Contra, United States v. Robinson*, 560 F.2d 507 (2d Cir. 1977). The charge originated in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). For criticism of the charge see Note, The Allen Charge: Recurring Problems and Recent Developments, 47 N.Y.U. L.Rev. 296 (1972); Note, An Argument for the Abandonment of the Allen Charge in California, 15 Santa Clara Law 939 (1975).