**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Harvey James PERRY, III,
Defendant-Appellant.**

**No. 10574.**

Missouri Court of Appeals,
Springfield District.

May 2, 1978.

John D. Ashcroft, Atty. Gen., Jeff W. Schaeperkoetter, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Jay White, Rolla, for defendant-appellant.

TITUS, Judge.

Defendant was jury-convicted of burglarizing and stealing from the bucolic home of Mr. and Mrs. Warnhoff. He was consecutively sentenced to prison terms of two years for each crime and appealed.

On the night in question, an across-the-road neighbor of the Warnhoffs became suspicious of the operations of an automobile in the area. After a preliminary inspection of the situation by vehicle, the neighbor returned home and undertook investigation afoot. He observed that the Warnhoff house was unlighted except for intermittent appearances of flashlight beams. No strange motor vehicle was seen nearby. The neighbor telephoned the sheriff's office to report what he thought was a burglary "in progress." Upon returning to his observation post, the neighbor saw the previously espied vehicle travel to and stop in front of the Warnhoff property. By aid of illumination of the vehicle's taillights, the neighbor saw "two people cross behind the car and get into it." Within minutes after departure of the suspect vehicle, a highway patrolman arrived on the scene. Together, the neighbor and patrolman pursued and captured the auto containing the supposed burglars, items stolen from the Warnhoff residence and various burglary tools. Defendant was driving the ap-

prehended automobile. Defendant's fiancee (his wife at the time of trial), occupied the right side of the front seat. Larry Goings described, without objection, as a man with a bad criminal record, sat in the rear seat.

Defendant's wife testified that she (as front seat passenger), Goings (as back seat passenger) and defendant (as driver) were taking a nocturnal automobile ride through the countryside when Goings "hollered to stop the car." . . . "[W]e thought something was wrong so we stopped the car, and [Goings] said, 'Give me the car keys,I have to go to the bathroom' . . . [Defendant] said, 'That's silly', and [Goings] reached up and took [the car keys] out of the ignition . . . and walked back behind the car somewhere. We didn't see where he went. . . . [Goings was gone] about ten minutes. . . . Then [Goings] came back and he had a box . . and got in the back seat and he told [defendant] to drive, and [defendant] said 'No' . . . [and Goings] told [defendant] that he didn't want to see me get hurt. [Goings] reached up and put his hands on my shoulders and then [defendant] drove."

■ Defendant's lone point relied on is:[1] "Appellant's contention is that the Court, by refusing his request to instruct the jury in writing upon the question of duress or coercion was error, in that there was substantial evidence, when considering the reasonable inferences to be drawn therefrom for the basis of the requested instruction concerning appellant's defense of duress or coercion to voluntarily commit the crime for which he was charged." Frankly, we cannot comprehend the point as written nor the concluding contradiction which seemingly undertakes to equate a defense of duress or coercion with a state of voluntariness. A point which cannot be comprehended without reference to other portions of the brief preserves nothing for appellate review. *State v. McClain*, 541

S.W.2d 351, 354[7] (Mo.App.1976). Nevertheless, it is suspected the point intended is that, considering the reasonable inferences to be drawn from the evidence, the trial court erred in refusing to instruct upon the defense of duress or coercion because there was substantial evidence that defendant did not voluntarily commit the charged crime. Albeit conceded that the rewritten point directed a complaint against the trial court's refusal to instruct upon the defense of duress and coercion, an insistence that unspecified, unexplained and undesignated reasonable inferences and substantial evidence (whatever they may have been) compelled such a charge, falls far short of the mandate of Rule 84.04(d), V.A.M.R., which requires that an appellant in his points relied on must particularize "wherein and why" the trial court's action or inaction was erroneous and enlighten us as to what the involved inferences and evidence are claimed to be. *Cf. State v. Purvis*, 525 S.W.2d 590, 596[10] (Mo.App.1975); *State v. Pauley*, 515 S.W.2d 824, 825[3] (Mo.App. 1974). In addition to the foregoing, defendant's point is not properly preserved for our review for the simple reason that the denied instruction is not set forth in the argument portion of his brief. Rules 28.18 and 84.04(e), V.A.M.R.; *State v. Gilbert*, 544 S.W.2d 595, 597[1] (Mo.App.1976); *State v. Lewis*, 532 S.W.2d 843, 844[1] (Mo.App. 1975); *State v. Hill*, 530 S.W.2d 50, 51[5] (Mo.App.1975); *State v. Fleming*, 528 S.W.2d 513, 515[1] (Mo.App.1975).

■ To avoid another charge that courts are wont to dispatch appeals on technicalities, we will consider this matter upon its merits, if any, in an abbreviated fashion. While coercion is a defense to all crimes except murder [*State v. Green*, 470 S.W.2d 565, dissenting opinion at p. 570 (Mo. banc 1971)], before coercion may constitute a defense to a criminal charge "the coercion must be present, imminent, and impending

---

1. In defendant's brief the point is mislabeled "Points and Authorities." Rules 84.04(a) and (d) V.A.M.R.

and of such a nature as to induce a well grounded apprehension of death or serious bodily injury if the act is not done. Threat of future injury is not enough. Nor can one who has a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily injury invoke the doctrine as an excuse". *State v. St. Clair*, 262 S.W.2d 25, 27–28[2] (Mo.1953); *Sanders v. State*, 556 S.W.2d 486, 489 (Mo.App.1977); 22 C.J.S. Criminal Law § 44, pp. 135–136.

The instruction offered by defendant and refused by the court reads: "If you find and believe from the evidence that at the time and place mentioned in evidence [defendant] was intimidated and threatened by [Goings] of violence to [defendant's present wife] and to himself, and that he the said defendant . . . as a result of said intimidation did not intent [sic] to break into any dwelling house or steal any property therefrom as mentioned in evidence, you must find defendant . . . not guilty of any offense."

■ We eschew the unnecessary task of determining whether the proffered instruction was correctly structured or, if it was not, whether the trial court was required, per Rule 26.02(6), V.A.M.R., to properly instruct the jury on the issue in a different form. This, for the simple reason that there was no evidence to support or mandate such an instruction. Before it should be submitted to the jury, an instruction must have a basis in evidence and it is not error to refuse to give an instruction that totally lacks evidentiary support. *State v. Manley*, 513 S.W.2d 703, 705[6] (Mo.App. 1974).

■ In effect, defendant's wife testified that she and defendant remained in the car while Goings ostensibly was heeding a call of nature but was actually burglarizing and stealing from the Warnhoff dwelling unassisted and unaccompanied by defendant. To the contrary, the instruction which defendant now says the court erroneously refused to give, was predicated upon the assumption that defendant did, in fact, partic-ipate in the burglary and did, in fact, participate in the stealing but only because he was coerced into doing so by Goings' threats of violence to defendant and his present wife. Furthermore, the sole evidence adduced by defendant relating to duress on the part of Goings was that the only coercion occurred after the burglary and stealing became fait accompli. The offered instruction had no evidentiary basis and the trial court did not err in refusing to give it.

The judgment is affirmed.

All concur.