**STATE of Missouri, Respondent,**

v.

**Otis THOMPSON, Jr., Appellant.**

No. 61790.

Supreme Court of Missouri, Division No. 1.

Jan. 15, 1981.

Rehearing Denied Feb. 9, 1981.

Bertram Cooper, Alisse C. Camazine, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Mark Comley, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Otis Thompson, Jr., was charged with murder in the first degree (felony murder), armed robbery and armed criminal action, arising out of an occurrence in St. Louis on January 13, 1979. On a jury trial, he was found not guilty of murder, and guilty of robbery and armed criminal action. The jury fixed punishment at 15 years' imprisonment for robbery and three years for armed criminal action. The trial court found the defendant a "dangerous offender" and sentenced him to life imprisonment for robbery and 10 years for armed criminal action. §§ 557.036 3. (2)(b), 558.016, RSMo 1978. This appeal followed.

At around 7:30 P.M., January 13, 1979, a man entered Cox's Cleaners, 4932 Union, St. Louis, and asked the attendant in charge, Donald Dickerson, for change for a dollar. Dickerson told the man he would have to get change from the change machine. The man went to the machine and then turned to Dickerson, pulled a weapon which he pointed at Dickerson and said: "Hey, brother, this is a stick-up, get down to the floor." Dickerson did as he was ordered. Another armed man entered the premises and directed the 10 or 12 customers to lie on the floor. The second man stepped over Dickerson lying on the floor. Dickerson saw only the shoes the man was wearing. He described them as "long green shoes."

Two customers who saw the second man enter saw him pulling a mask over his face as he entered the shop. These customers, at defendant's trial, identified Otis Thompson, Jr. as the second man.

Dickerson's testimony is not too clear, but apparently the second man went to the rear of the shop where the cash register was and money was kept and the first remained near Dickerson. For no apparent reason, he fired two shots into the floor, near Dickerson's head.

John Sonny Cox, a brother of the proprietor of the cleaning shop, lived upstairs over the shop. He heard the shots and went down the stairs to investigate. When he reached the foot of the stairs, shots were fired, apparently by a third participant in the robbery who was outside the shop. Cox was struck five times and eventually died from his wounds.

After the shots had been fired outside, someone came to the door and hollered: "Hey, Otis, man, let's go." The robbers took $70 from the cash register, $80 from Dickerson, a shotgun, and left.

Police were called to the scene. An evidence technician discovered a fingerprint on a candy box which was kept near the cash register. The print was identified as having been made by appellant. He was arrested on January 15. He denied participating in the Cox robbery. Two customers identified him at line-ups and he was indicted for murder, robbery and armed criminal action.

At his trial, the defendant offered alibi testimony of his brother, the brother's girl friend and defendant's girl friend, all of whom testified that they were with the defendant elsewhere at the time of the crime.

■ On this appeal the first assignment of error is based upon the claim that the prosecution intentionally withheld material evidence favorable to the defendant. This claim arises from the following circumstances, developed at a post-trial hearing on the defendant's motion for new trial because of prosecutorial misconduct.

On February 6, 1979, Billy Cole was arrested by St. Louis police on suspicion that he was the man who had been committing street robberies, using a sawed-off shotgun. At the time of his arrest, Cole had a sawed-off shotgun under his coat. He was identified by one of the robbery victims. The arresting officer questioned Cole about where he had obtained the gun. Cole told him that he had found it in a vacant service station lot at 4915 Union Avenue, across the street from Cox Cleaners.

Sergeant Murphy of the St. Louis Police Department, assigned as investigator for the Circuit Attorney's office, was told by Sheryl McGrew, a stepdaughter of the deceased John Cox, that she had heard from some girl friends that Cole might have had the shotgun taken from the laundromat. Murphy examined the weapon taken from Cole and determined that it was a High Standard whereas the police report on the Cox case described the gun taken from the laundromat as a Winchester. Murphy called William Cox, the laundromat proprietor, and was told by him that he had seen the gun taken from Cole and could not say that it was the one taken from the laundromat. Cox testified that he had examined the weapon but would not identify it.

Officer Brogan who worked on the Cox case testified that he interrogated Cole shortly after his arrest and that Cole denied that he had told the arresting officer that he found the gun at 4915 Union. He also testified that later, after he had talked to Officer Murphy, he saw Cole on the street and asked him if he would talk to Murphy about any connection between the gun and the Cox case. According to Brogan, Cole became angry and said: "You're not going to pin this _____ case on me. You've got Otis Thompson. You've got the right guy."

The thrust of the appellant's complaint is that the state deliberately concealed from the defense all of the facts relating to Cole's possession of the shotgun. Appellant points to negative answers to his requests for disclosure, as follows:

"Question: Any material or information within the possession or control of

the State, which tends to negate the guilt of Defendant;

"Answer: At this time I have no specific information which applies.

"Question: All items or information which would reasonably be expected to weaken or affect any evidence or testimony to be used against Defendant;

"Answer: At this time I have no specific information which applies.

"Question: All items or information which in any manner could be expected to aid Defendant in ascertaining the truth as to any manner affecting this cause;

"Answer: At this time I have no specific information which applies.

"Question: The statements of all persons who have been interviewed by an agent of the State in connection with the subject matter of this case and whom the State does not presently intend to call at trial;

"Answer: There are no such statements that apply.

"Question: The names and addresses of all persons who may have some knowledge of the facts of the present case (Tr. 7).

"Answer: I'm sure there are people out in this community somewhere who have 'some knowledge' of the facts of this case. However, I have provided you with the names of those people I intend to use as witnesses. I don't know of anyone else who can be of assistance to either the State or the Defendant at this time."

Appellant also points to a recorded interview of Sergeant Murphy, made two or three weeks prior to the trial in which Murphy replied negatively to the question of whether or not he had information indicating that the gun stolen from Cox had been used in other crimes. He did not name Cole when he was asked whether there were other suspects in the Cox case, although he admitted that at one time he considered Cole a suspect because of the possibility that the weapon Cole had came from Cox's.

According to defense counsel, he first learned of Cole after the trial when Cole's social worker at the workhouse informed counsel that Cole was an eyewitness to the Cox robbery. Defense counsel obtained a statement from Cole and Cole testified at the post-trial hearing on defendant's motion.

Cole's testimony was that he was across the street from the laundromat at the time of the robbery, that he saw a man come out of a doorway and he saw another man standing near the doorway pull a gun and fire five shots at the first man. Cole identified the person who fired the shots as a man known to him. That man then called inside the laundromat and ran across the street. Two men came out of the laundromat and ran across the street. One was carrying a shotgun which he dropped. Cole could not identify these two men. He did say that appellant, whom he knew, was not one of them. The next day Cole returned to the area and found the shotgun and took it. He later cut it off and it was taken from him by the police when he was arrested on February 6.

Although appellant points to his requests for information, his complaint here is not of failure on the part of the prosecutor to comply with the requirements of Rule 25.03. Rather, his complaint is upon constitutional grounds, springing primarily from *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* laid down the rule " * * * that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196.

This case involves a refinement of *Brady*, enunciated in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). *Agurs* delineates three situations in which the *Brady* rule applies: First: The use of perjured testimony, known to the prosecution. Second: Failure to produce favorable evidence in response to a pretrial request for specific evidence, the situation of *Brady*. Third: The case in which only a general request for "*Brady* material" has been made. In *Agurs*, there had been no request

for information and the court concluded "* * * that there is no significant difference between cases in which there has been merely a general request for exculpatory matter and cases, like the one we must now decide, in which there has been no request at all." 427 U.S. at 107, 96 S.Ct. at 2399.

The test applied by *Agurs* in the third situation is " * * * that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." 427 U.S. at 112–113, 96 S.Ct. at 2401–2402.

Here the evidence known to the prosecution, viewed favorably to the defendant, was that Cole claimed to have picked up a shotgun across the street from the Cox robbery, where a shotgun had been taken. Such evidence in no manner detracted from the eyewitness identification of appellant as a participant in the robbery. Cole's possession of the stolen weapon, if it in fact was that, might have given rise to suspicion that he was a participant in the robbery but that would not have exculpated appellant inasmuch as more than one person was involved in the crime. The evidence in the state's possession would not have created a reasonable doubt of appellant's guilt in the light of all of the evidence.

Appellant's claim must encompass the further evidence based upon Cole's testimony at the post-trial hearing as an eyewitness who stated that appellant was not one of the Cox robbers. Appellant does not charge that the prosecution was aware that Cox would so testify but rests his case upon the proposition that the prosecution's failure to reveal the facts which it possessed regarding Cole's connection with the incident prevented the defense from previously discovering that Cole was a witness to the crime. He relies upon statements, such as that in *Lee v. State*, 573 S.W.2d 131, 134 (Mo.App.1978): "In determining materiality of a nondisclosure, account must be taken not only of the precise evidence suppressed but also of such additional evidence to which a skillful counsel would be led by careful investigation."

In this case, the prosecution had pursued its investigation based upon the evidence which appellant now complains was improperly suppressed. That investigation, including interviews of Cole, had produced nothing favorable to appellant. In fact, the only evidence relating to the Cox matter adduced from Cole was adverse to appellant, Cole stating to the police that they had "the right guy" in appellant.

■ In such circumstances, Cole's post-trial testimony was properly viewed by the trial court as a request for a new trial on the basis of newly discovered evidence and it was properly evaluated by the trial court in that light. One of the requirements that must be met for a new trial on the basis of newly discovered evidence is that the evidence be sufficiently credible that it would probably have produced a different result. *State v. Noble*, 591 S.W.2d 201, 206[9, 10] (Mo.App.1979). In this case, the trial court in its finding specifically rejected the credibility of Cole's testimony. The court found:

"Billy Cole was a friend of defendant and was available to defendant as a witness. It is inconceivable that defendant did not know prior to trial what, if any, testimony Cole could give favorable to him. The Court finds and believes that Cole's testimony is at best a post-conviction afterthought by defendant to set up a foundation for challenging his conviction."

Cole's testimony showed that he was a friend of appellant, that he had visited in appellant's house, that he and appellant were both confined in jail prior to appellant's trial and that they had discussed the charge against appellant. In these circumstances the court could properly reject Cole's explanation for not having come forward earlier: "I thought (Thompson) at

least would beat the case. I thought he was home and I knew that he hadn't done it. That's why I came forth now cause at first I didn't want to get involved in it."

There was no suppression of evidence by the prosecution which deprived appellant of a fair trial and the trial court properly rejected appellant's post-trial motion.

■ Appellant's second point is that the trial court erred in giving instructions and accepting the jury's verdict because instructions on both armed criminal action and robbery in the first degree and felony murder and robbery subjected the defendant to multiple punishments for the same offense in violation of the double jeopardy clause of the federal constitution, applicable to the states by reason of the Fourteenth Amendment. The appellant's motion for new trial complains only of the instructions on murder and robbery and that is the extent of this court's review.

Appellant invokes *State v. Morgan*, 592 S.W.2d 796 (Mo. banc 1980) vacated, *Morgan v. Missouri*, —— U.S. ——, 101 S.Ct. 56, 66 L.Ed.2d 12 (1980), and *Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980) vacated, *Sours v. Missouri*, 446 U.S. 962, 100 S.Ct. 2935, 64 L.Ed.2d 820 (1980); on remand, 603 S.W.2d 592 (Mo. banc 1980), to which may be added *State v. Olds*, 603 S.W.2d 501 (Mo. banc 1980), and argues, in effect, that, since a conviction for both first degree (felony) murder and the underlying felony cannot stand, the submission to the jury of both offenses subjected him to double jeopardy in violation of federal constitutional guaranties.

■ " * * * [T]he Fifth Amendment guarantee against double jeopardy * * * has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. * * *." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

The submission to the jury of the charges of murder and robbery violated none of these protections. Furthermore, under the test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), murder and robbery are not the same offense. The prohibition against punishment for felony murder and the underlying felony is premised upon legislative control of multiple punishment, *Olds*, not the double jeopardy clause.

Appellant argues that the submission of both charges was prejudicial because it opened the door to inconsistent verdicts. That, however, is not a double jeopardy problem and appellant's contention on this score will be dealt with below.

■ Appellant contends that the trial court erred in extending his sentence under the "dangerous offender" provision (§ 558.-016, RSMo 1978) because the court had no factual basis for a finding that he was a "dangerous offender."

One of the conditions for a "dangerous offender" finding is that the defendant: "Is being sentenced for a felony during the commission of which he knowingly murdered or endangered or threatened the life of another person or knowingly inflicted or attempted or threatened to inflict serious physical injury on another person; * * *." § 558.016 3. (1), RSMo 1978. Appellant's position is that the robbery charge was submitted to the jury based upon a threat of "the immediate use of physical force," and that the trial court could not go beyond the jury's finding on that issue and find that the defendant "knowingly threatened to inflict serious injury on another person" unless evidence to support such finding had been presented at the post-trial hearing under Section 558.021.

The trial court could make its determination of the application of Section 558.016 3. (1) on the basis of the evidence presented at the trial. No additional evidence on that score was required at the post-trial hearing. *State v. Berry*, 609 S.W.2d 948 (Mo. banc 1980). The evidence that two shots were fired in the vicinity of Dickerson's head in the course of the robbery adequately support a finding of threat to inflict serious physical injury. *State v. Johnson*, 605 S.W.2d 151, 155[8] (Mo.App.1980).

Appellant also questions the imposition of "dangerous offender" status based upon the acts of a fellow participant in the crime. That question is fully answered in *Johnson*.

■ Appellant's next point is that the trial court erred in failing to grant his motion for a continuance because of the unavailability of defense witness Berneice Atkins.

On July 12, 1979, at the close of the state's case, a motion for continuance was filed on behalf of the defendant. The motion alleged that Berneice Atkins, an employee of Cox Cleaners, had been "endorsed" as a witness by both the state and the defense; that Atkins was a material witness for the defense because she would testify that the defendant was a customer of Cox Cleaners at least twice between August, 1978 and the date of the robbery; that the testimony was material because the jury might infer from Atkins' testimony that defendant's fingerprint found on the candy box had been placed there on one of these prior occasions; that defense counsel was informed on July 12, 1979, that Atkins had suffered a heart attack on July 5, 1979. The motion was supported by the affidavit of defense counsel. The motion was overruled.

The trial court's ruling was not an abuse of discretion. The fact that the state had endorsed Atkins did not excuse defense failure to use due diligence in procuring her presence if she was to be used as a defense witness. The motion alleged that defense counsel had "requested the Sheriff of the City of St. Louis to subpoena this witness to appear on defendant's behalf." The motion is wholly silent as to when such request had been made and whether or not the sheriff had made a return on the subpoena. According to the affidavit, the witness had suffered a heart attack on July 5, 1979. Pre-trial motion was taken up on July 9 and trial began on July 10. Had adequate steps been taken prior to that date to procure the witness's presence, defendant would have known prior to trial of the problem with the witness. In these circumstances, error may not be premised upon the trial court's ruling on the motion made at the conclusion of the state's case. *State v. Scott*, 338 S.W.2d 873, 876[4–6] (Mo.1960).

■ Appellant's next point is based upon the failure of the trial court to declare a mistrial because of remarks of the prosecutor on final argument.

At the trial, the state offered the testimony of Paul English, a police department fingerprint expert. The witness testified that he had compared the latent fingerprint found on the candy box at the scene of the robbery with appellant's print and had concluded that the print found at the scene was made by appellant's right middle finger. In the direct examination of the witness, the prosecutor sought to show by the witness that the print in question had been provided defendant for his examination. Defense counsel's objection to such questioning was sustained, the trial court stating that it would await defense counsel's cross-examination of the witness. Cross-examination was limited, seeking to show the impossibility of fixing the time that the fingerprint on the box was made, and that 12 points of comparison had been identified out of a potential 50 on the print in question. The prosecutor then on redirect started to inquire about furnishing print to defendant. The court stated that it would sustain defendant's objection because there had been no challenge to the witness's identification testimony.

In defense counsel's closing argument, he questioned English's testimony, stating "Do experts make mistakes? I don't know." The prosecutor objected to the argument as beyond the scope of the evidence, stating "His own experts had an opportunity to view that fingerprint and examine it." The trial court overruled the prosecutor's objection.

Then, out of the presence of the jury, defense counsel moved for a mistrial because of the statement that a defendant's expert had examined the fingerprint. The request for a mistrial was denied.

Appellant relies upon *State v. Ralls*, 583 S.W.2d 289 (Mo.App.1979) in support of his contention that the failure to order a mistrial in these circumstances was error. In *Ralls*, a stealing from the person case, the

victim viewed the defendant in police custody only a few minutes after her purse had been snatched. At the trial, a police officer testified that the victim identified the defendant at that confrontation. An objection to the testimony was sustained and the jury instructed to disregard the testimony. In closing argument, the prosecutor argued the same testimony. Objection was sustained and the jury instructed to disregard the argument but a request for mistrial was denied.

The Court of Appeals held that the refusal of a mistrial in such circumstances was error, noting " * * * the added impact of a repetition of the improper evidence, aggravated by prosecutorial misconduct." 583 S.W.2d 292.

Two factors distinguish the present case from *Ralls*: First, no repetition of excluded evidence was involved, the jury not having heard the original effort by the prosecutor to present evidence on the subject. Second, the matter referred to was not a strongly disputed, decisive issue as was the identification issue in *Ralls*. In this case, the major thrust of defense effort was to show the possibility that the fingerprint had been placed there at sometime other than the robbery. Defense counsel, of course, had the right to question the reliability of the state's fingerprint identification testimony and the prosecutor's objection was wholly groundless and his volunteered remark cannot be justified. Nevertheless, the trial judge has discretion in employing the drastic remedy of a mistrial, the only relief requested by the defense counsel.

Given the nature of the matter to which the remark referred, the trial court will not be found to have erred in failing to grant a mistrial.

■ Appellant next contends that the trial court erred in permitting the substitution of an information for the indictment upon which the case came to trial. The indictment was in three counts, Count I, Murder, Count II, Robbery, and Count III, Armed Criminal Action. At the close of the state's opening statement, the defendant moved to dismiss Count I on the grounds that the prosecutor's statement alleged that John Sonny Cox was the murder victim whereas the indictment named Donald Dickerson. The court permitted the state to file a substitute information in lieu of the indictment, naming Cox as the murder victim and containing without change the allegations of Counts II and III of the indictment.

In view of the verdict of not guilty on the murder charge, there is no merit to appellant's claim of error. Any error in permitting the substituted information was mooted by the verdict.

■ Appellant complains that the trial court erred in permitting the prosecutor, on voir dire of the jury panel, to explain the "legal doctrines" involved in felony murder and responsibility for the acts of others. When the prosecutor first started to go into the nature of the felony murder law, the trial court sustained defense counsel's objection and stated that no such questions would be allowed, that the panelists could be asked whether or not they would follow the law as given by the court but that no further inquiry would be permitted. The prosecutor was not satisfied with the ruling and propounded further questions employing the language "felony murder" to which objections were sustained. The prosecutor then sought to limit his questioning to the area fixed by the court, but at the conclusion of a lengthy inquiry, one panelist inquired "Could you describe what this felony murder is?" At that, the court stated that its restrictions were off and that either party could ask whatever questions they chose. The prosecutor, over defense objection, proceeded to explain the law of felony murder and criminal responsibility for persons acting in concert, and informed them that he anticipated that the court would give them instructions relating to such matters and asked whether anyone had any "quarrel" with those legal theories.

On this appeal, the claim of error is based upon the proposition that explanation of the law is the sole province of the court.

The trial court's overruling of the objection was within the limits of the discretion accorded it in the control of voir dire. Although appellant asserts that the trial court permitted the prosecutor to argue the

state's evidence to the panel in an effort to commit them to a verdict against the defendant, the record shows only that the prosecutor stated the bare facts which the state expected to prove in order to invoke the legal doctrines involved, without in any manner seeking a commitment from the panelists to a verdict. Therefore, the trial court's ruling was not an abuse of discretion. *State v. Green*, 511 S.W.2d 867, 870–873[4, 5] (Mo.1974).

Appellant would distinguish *Green* on the grounds that in *Green* the state was permitted to inquire "briefly * * * into the law of felony murder and acting with another." The opinion in *Green* notes that the questions involved covered some 20 pages of the trial transcript. Here the objected to portion appears in 10 pages so there would appear to be no basis for the distinction which appellant suggests. See also *State v. Brown*, 547 S.W.2d 797 (Mo. banc 1977).

■ Douglas McGuire, a police department evidence technician, testified that he "lifted" a latent fingerprint from a candy box at the scene of the robbery. He testified that he dusted the box with black powder, covered the powder with scotch tape, and "the stickiness of the tape picks up the black powder that was on the fingerprint." The witness testified on direct examination that a fingerprint will last "indefinitely." "There is no set pattern why a fingerprint will disappear or evaporate. There are many variables in fingerprinting, temperature, humidity, the surface itself it's put on. * * * The type of surface it's put on. Paper will absorb it, glass will not absorb moisture. There's a thousand variables involved in fingerprinting."

On cross-examination, he acknowledged that a fingerprint might last as long as two years. On redirect examination, the witness stated that, in his experience, the newer a print was the faster it will absorb the powder and the fresher it will look. "It will jump right out." He said that when he dusted the print in question, "It jumped out as soon as one or two strokes of the brush" and that indicated that "it had been put on recently, very recently." Defense counsel moved that the answer be stricken because

it called for a conclusion for which no foundation had been laid. The motion was overruled. That ruling is assigned as error.

On recross-examination, the witness acknowledged that there was no way by which he could determine scientifically the age of the print in question and that it was impossible that it could have been as old as six months.

The evidence showed that the witness had worked as an evidence technician, collecting physical evidence and fingerprints at crime scenes. He had received training for the FBI and others in the St. Louis Police Department and had periodically updated his training. He explained that his conclusion regarding the newness of the print in question was based upon his experience that a newer print "will jump right out."

The evidence adequately established the witness's expertise in the collection of fingerprints and it also showed the basis for his conclusion. Therefore, the trial court did not err in refusing to strike the answer objected to. *State v. Granberry*, 530 S.W.2d 714, 730[26] (Mo.App.1975).

■ Appellant contends that the jury verdict should not have been sustained because it was inconsistent and improper. He argues that his only defense was alibi and that when the jury found him not guilty of murder, it necessarily accepted his alibi and therefore could not have found him guilty of other offenses occurring at the same time and place.

When a defendant is tried on a multiple count charge involving crimes with different elements, there is no requirement that the jury's verdict be logically consistent. The jury may acquit on one charge and convict on the other. *State v. Amerson*, 518 S.W.2d 29, 32–33[4, 5] (Mo.1975); *State v. Voyles*, 561 S.W.2d 697, 699[3] (Mo.App. 1978). There is no reason to speculate on the reasoning which led to the verdict in this case. It is sufficient that the evidence have supported the finding of guilt which the jury made, without regard for its verdict of acquittal.

Appellant relies upon cases such as *State v. Handley*, 585 S.W.2d 458 (Mo. banc 1979),

and *State v. Martin*, 602 S.W.2d 772 (Mo. App.1980), in which it has been held that on a charge of first degree felony murder as now defined, a conviction for a lesser degree of homicide cannot stand. Those cases did not involve a verdict acquitting the defendant of homicide and finding him guilty of the felony alleged to have underlain the homicide. What was said in those cases about the effect of the failure to find the defendant guilty of felony murder as a finding on the underlying felony is not applicable in this case where the jury has made a finding of guilt on the underlying felony.

In view of *Sours* II (603 S.W.2d 592), the conviction for armed criminal action cannot stand.

Judgment affirmed as to Count II (robbery); reversed as to Count III (armed criminal action).

All of the Judges concur.