STATE of Missouri,
Plaintiff-Respondent,

v.

Horise O'TOOLE, Defendant-Appellant.

No. 41710.

Missouri Court of Appeals,
Eastern District,
Division One.

June 9, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 10, 1981.

Application to Transfer Denied
Sept. 8, 1981.

J. Justin Meehan, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Jan Bond, Asst. Attys. Gen., Jefferson City, George A. Peach, III, Circuit Atty., St. Louis, for plaintiff-respondent.

DOWD, Judge.

Defendant-appellant, Horise O'Toole, was charged with first degree (felony) murder and convicted by a jury of second degree murder for the killing of Vernice Weary. He was also charged and convicted of first degree robbery and two counts of kidnapping. Defendant was sentenced to a term of thirty years imprisonment for the murder conviction and ten years sentences for each of the other three convictions, with each of the ten year sentences to run concurrently with each other and with the thirty year sentence.

Vernice Weary had lived with her two teenage sons, Larry and Michael, in the first floor of a home located in the City of St. Louis. In the early morning hours of July 30, 1977, while all three members of the family were home, Larry and Michael were awakened by the sound of gunshots. Shortly thereafter, two men carrying guns entered the boys' bedroom. One of the men was Earl Wilkerson, who the boys had known for several months. Wilkerson had been in the home on prior occasions. The other man was wearing a nylon stocking over his face while in the home. This man later removed the stocking, however, and both Larry and Michael subsequently identified defendant as the man who accompanied Wilkerson on this morning.

The men ordered Larry and Michael to get dressed. Wilkerson left the room briefly and returned with Vernice Weary's purse. Defendant told Michael to get all the money and the car keys from the purse. Michael gave him the $30.00 that was inside the purse, but the car keys were not there. Wilkerson again left the room and returned shortly thereafter with the keys. Michael was then told to unlock the door to a third bedroom where a television and stereo component were kept. Initially defendant told the boys to bring the television and stereo, but the men decided against doing so. They concluded that it would not look right taking those items outside at that time of the morning.

The men then placed the boys in Vernice Weary's automobile and drove to Illinois. During the trip defendant threw some shells from a gun in his possession out the car window. Defendant also made sure to remove all personal identification in the boys' possession. The ride ended in East St. Louis, Illinois, where the defendant asked Wilkerson, "Do you want to do one of these with me?" Wilkerson then took Michael to a nearby railroad boxcar. Once inside, Wilkerson fired three shots, one of which struck Michael in the shoulder. Meanwhile, defendant made Larry run up a hill and lie down. Defendant fired five shots at Larry and the boy was wounded in the leg.

The City of St. Louis police were subsequently notified and went to the Weary residence. The found Vernice Weary's body in a bedroom of the home. An autopsy revealed that Ms. Weary had been shot three times. Michael and Larry later identified a photograph of defendant as the man who accompanied Wilkerson. Defendant was eventually located in Tacoma, Washington and returned to St. Louis. While in custody defendant told police officers that he had shot the boy but not the lady. At trial defendant presented alibi testimony of his girlfriend that they had left St. Louis on July 28, 1977 and driven to Tacoma, Washington.

Defendant's first contention in this appeal is a challenge to the sufficiency of the first count of the indictment upon which he was tried. Count I of the indictment read, in part, as follows:

"That HORISE O'TOOLE also known as HORACE O'TOOLE, ACTING WITH EARL WILKERSON, at the City of St. Louis aforesaid, on the 30th day of July, 1977, did unlawfully, feloniously and willfully kill VERNICE WEARY, while the said HORISE O'TOOLE also known as HORACE O'TOOLE, acting with EARL WILKERSON, was engaged in the perpetration of a robbery, and did thereby shoot the said VERNICE WEARY, inflicting a mortal wound upon the said VERNICE WEARY, from which said mortal wound VERNICE WEARY, did die on July 30, 1977; contrary to Sections 565.002, 565.008, Revised Statutes of Missouri, in such case made and provided and against the peace and dignity of the State."

Defendant argues that the indictment is fatally defective because it (1) erroneously contained the elements of first degree (felony) murder and an element of capital murder, (2) was duplicitous in that it purported to charge defendant with two separate crimes in one count and (3) referred to a non-existent statutory section.

■ We note initially that defendant did not challenge the sufficiency of the indictment before or during trial, nor in his mo-

tion for a new trial. However, an allegation that an information or indictment failed to charge a crime is jurisdictional and may be raised for the first time on appeal. *State v. Tierney*, 584 S.W.2d 618, 621 (Mo. App.1979); *State v. Johnson*, 548 S.W.2d 245, 248 (Mo.App.1977).

■ The indictment did contain all the elements of first degree (felony) murder plus one element of capital murder—"willfully."[1] Defendant argues that because of the inclusion of "willfully" the indictment failed to adequately notify him whether he was charged with capital murder or first degree (felony) murder. The failure of an indictment or information to precisely track the statutory language does not necessarily render it insufficient. In determining the sufficiency of an indictment the test is whether or not it states the essential elements of the offense charged so that the defendant is adequately informed of the charge against him and the final disposition of the charge will constitute a bar to further prosecution for the same offense. *State v. Downs*, 593 S.W.2d 535, 540 (Mo. 1980).

■ Count I of the indictment charged defendant with (1) the unlawful killing (2) of a human being (3) committed in the perpetration (4) of a robbery. Thus, Count I of the indictment clearly stated the elements of first degree (felony) murder. The inclusion of "willfully" did not render the indictment insufficient. A charge of capital murder would require allegations of acting knowingly, premeditatedly and deliberately. We hold that the indictment adequately informed defendant that he was charged with first degree (felony) murder and constituted a bar to further prosecution

for that offense. Furthermore, there was no demonstration that defendant was prejudiced by the use of the language complained of. Rule 24.11 (1977).[2]

Defendant argues that the inclusion of "willfully" in Count I rendered the indictment void for duplicity. We have already determined that the indictment sufficiently alleged the crime of first degree (felony) murder. The indictment clearly did not charge two or more distinct offenses in Count I and defendant's duplicity argument is without merit.

■ Defendant also argues that the indictment was defective because it listed a non-existent statute. Rule 24.01(a) (now Rule 23.01(b)) required an indictment to state the section of the Revised Statutes of Missouri proscribing the conduct charged and the section fixing the penalty or punishment. The indictment in this case referred to Section 565.002, which was a non-existent statute.[3] It also referred to Section 565.008, which was the correct punishment section. The indictment sufficiently informed defendant of the offense charged and constituted a bar to further prosecution for that offense. Defendant has not shown any prejudice from the listing of the non-existent statutory section. Under these circumstances the failure to list the correct statute proscribing the conduct charged does not invalidate the conviction. *State v. Harris*, 598 S.W.2d 200, 202 (Mo.App.1980); *State v. Umfleet*, 587 S.W.2d 612, 616–617 (Mo.App.1979); *State v. Tierney*, 584 S.W.2d 618, 622 (Mo.App.1979).

■ Defendant next contends the trial court erred in submitting to the jury the offense of second degree murder on Count I of the indictment and in entering judgment

1. Section 565.001, RSMo Supp.1977 defined capital murder as follows:

"Any person who unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes the killing of another human being is guilty of the offense of capital murder."

Section 565.003, RSMo Supp.1977 defined first degree (felony) murder as follows:

"Any person who unlawfully kills another human being without a premeditated intent

to cause the death of a particular individual is guilty of the offense of first degree murder if the killing was committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary, or kidnapping."

2. Rule 24.11, as revised, is now Rule 23.11.

3. The correct statutory section was 565.003. There was no statutory section numbered 565.-002 in the Missouri Revised Statutes.

against defendant for that offense. Count I of the indictment charged defendant with first degree (felony) murder. Defendant now argues that the trial court was without jurisdiction to submit second degree murder because that offense is not a lesser included offense of first degree (felony) murder.

A similar factual situation was presented in the companion case of *State v. Wilkerson*, 616 S.W.2d 829 (Mo. banc, 1981). In *wilkerson*, the submission to the jury of second degree murder was upheld, even though the information charged the defendant with first degree (felony) murder and did not contain a separate count on second degree murder. This determination was based on the provisions of former Section 556.220 RSMo 1969 (applicable in *Wilkerson* and in the instant case). Section 556.220 RSMo 1969 provides as follows:

> Upon indictment for any offense consisting of different degrees, as prescribed by this law, the jury may find the accused not guilty of the offense charged in the indictment, *and may find him guilty of any degree of such offense inferior to that charged in the indictment*, or of an attempt to commit such offense, or any degree thereof; and any person found guilty of murder in the second degree, or of any degree of manslaughter, shall be punished according to the verdict of the jury, although the evidence in the case shows him to be guilty of a higher degree of homicide. (Emphasis added).

The Court in *Wilkerson* noted that the legislature has recognized a difference between an offense being a lesser offense of the offense charged because it is specifically denominated as such and an offense being a lesser offense because it is necessarily included in the offense charged.[4] In the present case the jury found defendant

guilty of second degree murder under a charge of first degree (felony) murder. Pursuant to *Wilkerson*, the jury found defendant guilty of a degree of murder "inferior to that charged in the indictment."[5] Thus, the trial court did not err in submitting second degree murder to the jury under the charge of first degree (felony) murder or in entering judgment against defendant for the offense of second degree murder.

The third contention raised by defendant is that the trial court erred in entering judgment on the first degree robbery charge on two reasons: (1) charging the defendant with felony murder and robbery violated the federal constitutional prohibition against double jeopardy and (2) the finding of guilt for second degree murder together with the implicit acquittal of felony murder necessarily acquitted defendant of the underlying felony of robbery. These issues have been raised for the first time on this appeal. Although these issues were not properly preserved for review we consider them below.

■ Defendant was charged with the offenses of first degree (felony) murder and robbery. He was convicted of second degree murder and robbery. Defendant could not be convicted and punished for *both* felony murder and the underlying felony of robbery. *State v. Morgan*, 612 S.W.2d 1 (Mo. banc 1981); *State v. Olds*, 603 S.W.2d 501, 510 (Mo. banc 1980).[6] But in the present case defendant was not convicted of felony murder.

■ Defendant's argument—that since a conviction for both first degree (felony) murder and the underlying felony cannot stand, the submission to the jury of both offenses subjected him to double jeopardy

---

4. *See* Section 556.230 RSMo 1969.

5. The court in *Wilkerson* also noted that if the case had arisen after January 1, 1979, it would be governed by Section 556.046 RSMo 1978. The court noted that this statutory provision is a legislative determination that an offense can be a lesser offense of another offense so that a charge of the greater will support a conviction

of the lesser, even though the lesser offense is not necessarily included in the greater.

6. The prohibition against punishment for both felony murder and the underlying felony is not premised upon the double jeopardy clause, but rather upon legislative control of multiple punishment. *State v. Thompson*, 610 S.W.2d 629, 634 (Mo. 1981).

in violation of federal constitutional guarantees—was rejected in *State v. Thompson*, 610 S.W.2d 629 (Mo. 1981). In *Thompson* the court concluded that submission to the jury of the charges of felony murder and robbery did not violate the constitutional protections guaranteed by the Fifth Amendment. *Id.* at 634. Since second degree murder (the homicide of which defendant was convicted) and robbery are not the same offense, *State v. Charles*, 612 S.W.2d 778, 781 (Mo. banc 1981), the Fifth Amendment does not require dismissal of the robbery conviction.

■ Defendant also argues the verdict of guilty for second degree murder together with the implicit acquittal of felony murder meant the jury must have found defendant had unlawfully killed Vernice Weary but had not committed the robbery. We disagree.

While the finding of second degree murder and robbery did render the verdict inconsistent—such inconsistency on separate counts of an indictment does not require reversal. In *State v. Thompson, supra,* the court stated:

> When a defendant is tried on a multiple count charge involving crimes with different elements, there is no requirement that the jury's verdict be logically consistent. The jury may acquit on one charge and convict on the other. *State v. Amerson*, 518 S.W.2d 29, 32–33 [4, 5] (Mo. 1975); *State v. Voyles*, 561 S.W.2d 697, 699 [3] (Mo.App. 1978). There is no reason to speculate on the reasoning which led to the verdict in this case. It is sufficient that the evidence have supported the finding of guilt which the jury made, without regard for its verdict of acquittal. 610 S.W.2d at 637.[7]

In *State v. McCall*, 602 S.W.2d 702 (Mo. App. 1980), the defendant was charged, among other things, with felony murder and robbery. He was convicted of manslaughter and robbery. This court held that the inconsistency in the jury's verdict on the two counts was not fatal. *Id.* at 708.

■ The jury's failure to find defendant guilty of felony murder, even though it found him responsible for the killing of Vernice Weary, does not preclude a finding of guilt on the underlying felony of robbery. An inconsistent verdict among the varied charges of a multiple count indictment does not require reversal, provided there is sufficient evidence to support the jury's finding of guilt. Viewing the evidence in the light most favorable to the state, there was sufficient substantial evidence from which the jury could have found defendant guilty of second degree murder and first degree robbery. Accordingly, the trial court did not err in entering judgment against defendant on the first degree robbery charge.

Defendant's final contention is that the trial court erred in overruling his motion to suppress and in permitting two police officers to testify over objection concerning certain statements made by defendant while in custody because (1) defendant was not informed of his constitutional rights prior to making the statement (2) the confession was made involuntarily and (3) the trial court failed to make a finding that the state met its burden of establishing by a preponderance of the evidence that the confession was voluntarily made.

The only witness who testified at the hearing on the motion to suppress was police officer Joseph Burgoon. He indicated that when defendant was returned to St. Louis on October 13, 1977, he was given *Miranda* warnings and declined to make a statement. Approximately one month later Burgoon received word that defendant wanted to talk with him. Someone from

---

7. In *Thompson*, the defendant was charged with felony murder, armed robbery and armed criminal action. He was found not guilty of murder and guilty of robbery and armed criminal action. He argued that the verdict was inconsistent and improper because his only defense was alibi and by being found not guilty of murder the jury must have accepted his alibi and could not have found him guilty of other offenses occurring at the same time and place. The court in *Thompson* upheld the robbery conviction, even though the jury's verdict was not logically consistent.

the City of St. Louis Jail called the homicide office from the City Jail. It was never established who made this call. After receiving the message Burgoon and his partner went to see defendant at the City Jail. Burgoon testified that he did not initiate the meeting and did not want to go over and talk to defendant.

The officers met defendant in a room at the jail. Officer Burgoon testified that upon entering the room defendant said, "Off the record." Burgoon responded by asking, "What do you want to talk about?" Defendant then said he had shot the boy that night but not the lady, and that he wanted to talk to the Circuit Attorney's Office. Defendant indicated that he had heard that Wilkerson, his partner on the morning of July 30, 1977, was trying to blame defendant for the murder of Vernice Weary. Burgoon told defendant that he would see what he could do. Burgoon testified that this was the extent of their conversation. Burgoon said he never agreed to talk off the record and he did not question defendant at all. *Miranda* warnings were not given at any time during this meeting.

 Defendant first argues that his statement should be suppressed because the police officers failed to advise him of his *Miranda* rights as enunciated in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In order for the procedural safeguards outlined in *Miranda* to apply an individual must be both in custody and interrogated. *State v. Battles*, 607 S.W.2d 723, 728 (Mo.App.1980); *State v. Darris*, 587 S.W.2d 89, 91 (Mo.App.1979). It is clear that defendant was in custody and the issue, therefore, is whether he was interrogated by the officers. As the Supreme Court noted in *Miranda*:

Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can

be interrogated.... Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today. 384 U.S. at 478, 86 S.Ct. at 1630.

In *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) the Supreme Court reexamined the meaning of "interrogation" under *Miranda*. In defining "interrogation" the Court stated the following:

We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response. (Emphasis in original) 446 U.S. at 300–302, 100 S.Ct. at 1689.

 Our review of the record as a whole indicates that no interrogation under *Innis* occurred. The uncontradicted testimony showed that the police who heard the statement in issue did not initiate the meeting with defendant. As soon as the police entered the room defendant opened the conversation by stating "Off the record" and

the police officer responded with the general remark, "What do you want to talk about?" The incriminating statement was made immediately thereafter. Officer Burgoon's question was in response to defendant's initial statement and cannot be deemed the equivalent of express questioning within a custodial setting. Nor can we say that the officers should have known that immediately following their remark defendant would make an incriminating statement. The officers had not sought the meeting with defendant and could not know what he wanted to discuss. Defendant's statement was volunteered and not the product of interrogation. Thus, there was no violation of defendant's rights under *Miranda.* In addition, the record does not indicate that the police officers sought to deliberately elicit incriminating information from defendant in violation of his Sixth Amendment right to counsel. *See Rhode Island v. Innis,* 446 U.S. 291, 300, n. 4, 100 S.Ct. 1682, 1689, n. 4, 64 L.Ed.2d 297 (1980); *State v. Holt,* 592 S.W.2d 759, 770 (Mo. banc 1980).

■ Defendant also argues that his incriminating statement was not made voluntarily, and that the findings of the trial court were deficient because the trial court failed to find that the state established by a preponderance of the evidence that the confession was voluntary. When a defendant has challenged the admissibility of a statement or confession made while he was in police custody, the burden is on the state to prove that the statement was voluntarily made. *State v. Higgins,* 592 S.W.2d 151, 158 (Mo. banc 1979). For a statement to be admissible, the state must prove by a preponderance of the evidence that it was voluntary. *State v. Hughes,* 596 S.W.2d 723, 726 (Mo. banc 1980).

■ In overruling defendant's motion to suppress, the trial court stated "the evidence to me indicates that there was no coercion regarding this alleged statement made by the Defendant and that the Defendant initiated the contact with the detective [Burgoon] . . . and therefore said statement was a voluntary act on the part of the Defendant and the statement should not be suppressed." Implicit in these findings, along with the trial court's admission of the statement in evidence, was a finding that the state established by a preponderance of the evidence that the statement was voluntary. There was no error in the trial court's findings regarding this statement. *See State v. Royal,* 610 S.W.2d 946, 948–949 (Mo. banc 1981).

■ It is also apparent from a review of the record that the finding of a voluntary statement is supported by substantial evidence. There is no evidence of mental or physical coercion, nor that defendant's statement was extracted by promises or by offers of leniency. Defendant's statement was not compelled within the meaning of the Fifth Amendment to the United States Constitution. The trial court's denial of the motion to suppress and admission of the statement in evidence were not error.

Judgment affirmed.

STEPHAN, P. J., and STEWART, J., concur.