**Otis THOMPSON, Jr., Appellant,**

v.

**STATE OF MISSOURI, John Ashcroft, Attorney General, Donald W. Wyrick, Warden, Missouri State Penitentiary, Appellees.**

No. 82–2157.

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1983.

Decided Jan. 10, 1984.

American Civil Liberties Union/Eastern Missouri, Inc., Bertram Cooper, St. Louis, Mo., for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

Before LAY, Chief Judge, and McMILLIAN and JOHN R. GIBSON, Circuit Judges.

McMILLIAN, Circuit Judge.

Otis Thompson, Jr., appeals from a final judgment entered in the District Court[1] for the Eastern District of Missouri denying his

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

petition for writ of habeas corpus. For reversal petitioner argues that (1) the prosecutor intentionally concealed information favorable to his defense in violation of due process of law, (2) he was subjected to multiple punishments for the same offense in violation of the double jeopardy clause, and (3) the state trial court's determination that he was a "dangerous offender" was not supported by the record. For the reasons discussed below, we affirm the judgment of the district court.

The underlying facts are fully set forth in *State v. Thompson,* 610 S.W.2d 629, 630–31 (Mo.), *cert. denied,* 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 122 (1981). According to the prosecutor's theory of the case, petitioner was one of three armed men who robbed a cleaning shop in St. Louis in January 1979. One robber entered the shop, approached the attendant and announced the robbery. A second robber then entered and directed the customers in the shop to lie on the floor. Two customers saw the second robber pull a mask over his face as he entered the shop and they identified petitioner as the second robber at the trial. The second robber removed money from the cash register. At this point the first robber fired two shots into the floor near the shop attendant's head. John Cox, the brother of the shop's owner, lived upstairs above the shop, heard the shots and came down the stairs to investigate. Cox was fatally shot by the third robber, who had apparently been waiting outside the shop. Someone then came to the door of the shop and shouted, "Hey, Otis, man, let's go." The two robbers ran out of the shop, taking money from the cash register and from the attendant and a shotgun from the shop. Later police technicians found a fingerprint near the cash register which was identified as petitioner's.

Petitioner was arrested two days after the robbery. He was charged with first degree murder (felony murder), armed robbery and armed criminal action. Following a jury trial, petitioner was found not guilty of murder and guilty of armed robbery and armed criminal action. The jury recommended sentences of fifteen years imprisonment for the armed robbery and three years for the armed criminal action. The state trial court found petitioner was a "dangerous offender" pursuant to Mo.Ann.Stat. § 558.016.3 (Vernon 1979) (as amended and renumbered, Mo.Ann.Stat. § 558.016.4 (Vernon Supp.1983))[2] and sentenced him to life imprisonment for the armed robbery and ten years for the armed criminal action. On appeal the Missouri Supreme Court vacated the conviction for armed criminal action and affirmed the conviction for armed robbery. 610 S.W.2d at 638; *but cf. Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 677–79, 74 L.Ed.2d 535 (1983) (prosecution and conviction of criminal defendant in single trial on both a charge of "armed criminal action" and a charge of first degree robbery, where armed robbery is the underlying felony, does not violate double jeopardy clause).

Petitioner then filed this petition for writ of habeas corpus, alleging that the prosecution intentionally concealed information favorable to the defense, that the prosecution improperly subjected him to multiple punishments for the same offense, and the state trial court improperly sentenced him pursuant to the state "dangerous offender" statute. The district court referred the petition to a magistrate pursuant to 28 U.S.C. § 636(b).[3] The magistrate's report and recommendation rejected each ground for relief and was adopted by the district court. *Thompson v. Missouri,* No. 82–0362C(4)

---

**2.** Mo.Ann.Stat. § 558.016.3 (Vernon 1979) (amended and renumbered, Mo.Ann.Stat. § 558.016.4 (Vernon Supp.1983)) provides:

 3. A "dangerous offender" is one who:
 (1) Is being sentenced for a felony during the commission of which he [or she] knowingly murdered or endangered or threatened the life of another person or knowingly in-

flicted or attempted or threatened to inflict serious physical injury on another person; and
 (2) Has been previously convicted of a class A or B felony or of a dangerous felony.

**3.** The Honorable David D. Noce, United States Magistrate for the Eastern District of Missouri.

**1316**

(E.D.Mo. Sept. 14, 1982) (order). This appeal followed.[4]

### I. *Disclosure of Exculpatory Evidence*

Petitioner's first and most serious argument is that personnel from the prosecutor's office intentionally concealed evidence which would have been favorable to petitioner's defense, despite specific pretrial requests for exculpatory information. In particular petitioner argues that, in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the state deliberately concealed from the defense information about the investigation and arrest of a man named Billy Cole and Cole's possession of a shotgun.

Before trial defense counsel had filed a discovery motion, seeking "[a]ny material or information within the possession or control of the State, which tends to negate the guilt of Defendant," "[a]ll items or information which would reasonably be expected to weaken or affect any evidence or testimony to be used against Defendant," "[a]ll items or information which in any manner could be expected to aid Defendant in ascertaining the truth as to any matter affecting this cause," "statements of all persons who have been interviewed by an agent of the State in connection with the subject matter of this case and whom the State does not presently intend to call at trial," and "names and addresses of all persons who may have some knowledge of the facts of the present case." The state answered these requests in the negative. Several weeks before trial, defense counsel asked one of the prosecutor's investigators whether there was any information indicating that the shotgun stolen from the cleaning shop had been used in other crimes and whether there were other suspects in the case. The investigator answered these questions in the negative.

After the trial defense counsel learned that a man named Billy Cole claimed that he had been an eyewitness to the cleaning shop robbery. Defense counsel filed a motion for new trial for prosecutorial misconduct based upon the concealment of the Cole investigation. Cole testified at the hearing on the motion for new trial. The Missouri Supreme Court summarized the circumstances surrounding the investigation of Cole and the shotgun as follows:

On February 6, 1979, Billy Cole was arrested by St. Louis police on suspicion that he was the man who had been committing street robberies, using a sawed-off shotgun. At the time of his arrest, Cole had a sawed-off shotgun under his coat. He was identified by one of the robbery victims [presumably reference to one of the *street* robbery victims]. The arresting officer questioned Cole about where he had obtained the gun. Cole told him that he had found it in a vacant service station lot . . ., across the street from [the cleaning shop]. Sergeant Murphy of the St. Louis Police Department, assigned as an investigator for the [prosecuting attorney's] office, was told by Sheryl McGrew, a stepdaughter of the deceased John Cox, that she had heard from some girl friends that Cole might have had the shotgun taken from the [cleaning shop]. Murphy examined the weapon taken from Cole and determined that it was a High Standard whereas the police

4. On appeal petitioner raises for the first time another ground for relief. Petitioner argues that the state trial court improperly sentenced him under the Missouri "dangerous offender" statute because at the time of his sentencing (October 1979) the dangerous offender statute did *not apply to* Class A felonies and armed robbery is a Class A felony. *Compare* Mo.Ann. Stat. § 558.016.4 (Vernon 1979), *with id.* § 558.016.6 (Vernon Supp.1983); *see State v. Kirk,* 636 S.W.2d 952, 956 (Mo.1982). The state argues that the state trial court incorrectly cited § 558.016.4 in sentencing and that the state trial court was authorized to sentence persons convicted of Class A felonies as dangerous offenders under Mo.Ann.Stat. § 557.-036.3(2) (Vernon 1979). This claim was apparently not raised in the state courts and was not raised in the district court. We will not consider it on appeal. *E.g., Holiday v. Wyrick,* 663 F.2d 789, 790 (8th Cir.1981). Because this claim was not presented to the district court, the petition did not involve exhausted and unexhausted claims. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

report on the [cleaning shop robbery] case described the gun taken from the [cleaning shop] as a Winchester. Murphy called William Cox, the [cleaning shop] proprietor, and was told by him that he had seen the gun taken from Cole and could not say that it was the one taken from the [cleaning shop]. Cox testified that he had examined the weapon but could not identify it.

Officer Brogan [, another police officer who had worked on the cleaning shop robbery,] testified that he interrogated Cole shortly after his arrest and that Cole denied that he had told the arresting officer that he found the gun [in the vacant lot across the street from the cleaning shop]. He also testified that later, after he had talked to Officer Murphy, he saw Cole on the street and asked him if he would talk to Murphy about any connection between the gun and the [cleaning shop robbery] case. According to Brogan, Cole became angry and said: "You're not going to pin this ... case on me. You've got Otis Thompson. You've got the right guy."

. . . .

Cole's testimony was that he was across the street from the [cleaning shop] at the time of the robbery, that he saw a man come out of a doorway and he saw another man standing near the doorway pull a gun and fire five shots at the first man. Cole identified the person who fired the shots as a man known to him. That man then called inside [the cleaning shop] and ran across the street. Two men came out of the [cleaning shop] and ran across the street. One was carrying a shotgun which he dropped. Cole could not identify these two men. He did say that appellant, whom he knew, was not one of them. The next day Cole returned to the area and found the shotgun and took it. He later cut it off and it was taken from him by the police when he was arrested on February 6.

610 S.W.2d at 631–32.

Standards for evaluating prosecutorial responses to defense requests for pretrial disclosure of exculpatory evidence were discussed in *Scurr v. Niccum,* 620 F.2d 186, 189 (8th Cir.1980) (citations omitted):

In *Brady v. Maryland,* the Supreme Court announced the rule that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." ... [Later in *United States v. Agurs,*] the Court clarified the *Brady* rule by enumerating "three quite different situations" in which the rule "arguably applies," each involving "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense."

In the first type of situation ... the inquiry is focused primarily on the type of evidence suppressed, to wit: "the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury."

The two remaining situations each covers a wide range of potentially exculpatory evidence, whereby the prosecution's duty to disclose the same is measured in either instance by the "materiality" of the evidence to the question of the defendant's guilt or innocence. Whether the evidence is sufficiently material to require its disclosure in a particular case is determined by initially considering whether the defense made a "specific" or merely a "general" request for its disclosure prior to trial. If a specific request was made, evidence is deemed material, and a reversal warranted, if disclosure of the evidence "might have affected the outcome of the trial." If only a general request was made, evidence is considered material only if it "creates a reasonable doubt that did not otherwise exist [when] evaluated in the context of the entire record."

Here, petitioner does not contend that perjured testimony is at issue. Petitioner does argue that the pretrial request for disclosure was specific and that personnel

from the prosecutor's office intentionally concealed the Cole investigation.[5]

[A] request for disclosure of particular information cannot be labeled as either "specific" or "general" in a vacuum. Rather, the question must be asked whether, under all the circumstances presented by the case, the request was such as to give the prosecution reasonable notice of what the defense desired. In other words, "specificity" is a function of several factors, including the literal language of the defense request itself, the apparent exculpatory character of the evidence sought, and the reasonableness of the explanation, if any, for which the evidence was not exposed or was not considered to be material by the prosecution.

*Id.* at 190. In the present case the written request for disclosure was general. However, several weeks before trial, defense counsel specifically asked an investigator from the prosecutor's office whether the shotgun stolen from the cleaning shop (and which had not yet been recovered) had been used in other crimes and whether there were other suspects in the case. We believe that this later discussion sufficiently clarified and narrowed the general request for

disclosure to give the prosecution reasonable notice of what the defense wanted.[6]

◼ We cannot say, however, that when evaluated in the context of the entire record, the nondisclosure[7] of the information about Cole and the shotgun might have affected the outcome of the trial. First, the police investigation indicated that the shotgun that had been seized from Cole was *not* the shotgun that had been stolen from the cleaning shop. Thus, there was no physical evidence connecting Cole to the cleaning shop robbery. Second, Cole's status as a possible suspect in the cleaning shop robbery did not exculpate petitioner because the robbery had been committed by at least three men. Third, neither Cole's status as a possible suspect nor the shotgun detracted from the two victims' identification of petitioner or the fact that petitioner's fingerprint was found beside the cash register. *See State v. Thompson,* 610 S.W.2d at 633. We also note that the state trial court, when ruling on petitioner's motion for new trial on the basis of newly discovered evidence, considered Cole's exculpatory statement and specifically rejected the credibility of Cole's testimony. *Id.*[8] Finally, we note that Cole's earlier state-

---

**5.** Cole did not make the statement that petitioner was not one of the men that he saw rob the cleaning shop until the hearing on the motion for new trial. Therefore, the state cannot be said to have suppressed Cole's exculpatory statement. However, petitioner argues that the prosecution's failure to disclose the Cole investigation prevented the defense from discovering that Cole was a witness to the robbery. *See State v. Thompson,* 610 S.W.2d 629, 633 (Mo.), *cert. denied,* 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 122 (1981).

**6.** Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge.

. . . .

. . . [B]ecause the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure.

*United States v. Agurs,* 427 U.S. 97, 106, 108, 96 S.Ct. 2392, 2398, 2399, 49 L.Ed.2d 342 (1976).

**7.** We do not address petitioner's contention that personnel from the prosecutor's office intentionally concealed this information. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87 [83 S.Ct. 1194, 1196, 10 L.Ed.2d 215] (1963). "[T]he constitutional obligation is [not] measured by the moral culpability, or the willfulness, of the prosecutor. . . . If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor." *United States v. Agurs,* 427 U.S. at 110, 96 S.Ct. at 2400 (footnote omitted).

**8.** The record showed that Cole was a friend of petitioner's, that they had been in jail together before petitioner's trial and that they had discussed petitioner's case. *State v. Thompson,* 610 S.W.2d at 634.

ment to police was not favorable to the defense and in fact incriminated petitioner in the cleaning shop robbery.

## II. *Double Jeopardy*

■ Petitioner next argues that his prosecution for armed robbery and felony murder violated the double jeopardy clause's prohibition against multiple punishments for the same offense. Petitioner argues that because armed robbery is a lesser included offense of felony murder (where the underlying felony is armed robbery), both offenses should not have been submitted to the jury. Petitioner has misunderstood the double jeopardy clause.[9] Felony murder and armed robbery are two different offenses, even though armed robbery is the underlying felony and a lesser included offense of the murder. *See State v. Morgan,* 612 S.W.2d 1, 1 (Mo.1981) (banc) (per curiam) (stealing over $50 and second degree murder); *State v. Olds,* 603 S.W.2d 501, 509–10 (Mo.1980) (banc) (kidnapping and first degree murder). The double jeopardy clause does not prohibit the prosecution from charging and trying a criminal defendant for both the greater offense and the lesser included offense in a single trial. *See Harris v. Oklahoma,* 433 U.S. 682, 682–83, 97 S.Ct. 2912, 2912–13, 53 L.Ed.2d 1054

(1977) (per curiam); *see also State ex rel. Westfall v. Ruddy,* 621 S.W.2d 42, 45 (Mo. 1981) (banc) (second degree robbery and armed criminal action).[10]

■ Petitioner also argues that the jury could not have constitutionally found him guilty of armed robbery while at the same time finding him not guilty of felony murder. Consistency in jury verdicts is not required. *E.g., United States v. Ford,* 603 F.2d 1043, 1047 (2d Cir.1979).

## III. *Status as a "Dangerous Offender"*

■ Petitioner next argues that the state trial court improperly sentenced him to an enhanced term of imprisonment as a "dangerous offender" pursuant to Mo.Ann.Stat. § 558.016.3 because there was insufficient evidence as a matter of law to support the state trial court's finding that he was a "dangerous offender." Petitioner does not dispute a prior conviction of robbery but argues that there was no evidence in the record that he "knowingly ... endangered or threatened the life of another person or knowingly ... attempted or threatened to inflict serious physical injury on another person" during the commission of the cleaning shop robbery. Petitioner argues that at most the record shows that an accomplice fired two shots into the floor near the head

---

**9.** Double jeopardy would bar prosecution of petitioner for the felony murder in *another* trial because petitioner was acquitted of felony murder. *See Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978). The facts of the present case are not similar to those in *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (per curiam), in which the Court held that the double jeopardy clause barred prosecution for the lesser crime of armed robbery following the defendant's conviction of the greater crime of felony murder where the underlying felony was armed robbery.

**10.** Under Missouri law the jury could not have convicted petitioner of both the underlying felony and felony murder. *See State v. Morgan,* 612 S.W.2d 1, 1 (Mo.1981) (banc) (per curiam) (stealing over $50 and second degree murder); *State v. Olds,* 603 S.W.2d 501, 509–10 (Mo. 1981) (banc) (kidnapping and first degree murder); *see also* Mo.Ann.Stat. § 556.041, .046 (Vernon 1979). However, conviction and punishment for both the underlying felony and felony murder would not violate the prohibition

against multiple punishments for the same offense in the double jeopardy clause of the fifth amendment. The Supreme Court recently stated that

> [w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.
>
> . . . .
>
> ... [S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes.

*Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 678, 679, 74 L.Ed.2d 535 (1983) (case involved Missouri first degree robbery and armed criminal action statutes). *See Whalen v. United States,* 445 U.S. 684, 692–95, 100 S.Ct. 1432, 1438–39, 63 L.Ed.2d 715 (1980) (separate statutory offenses of rape and felony murder).

**1320**

of the attendant during the robbery and that the acts of an accomplice cannot constitutionally be imputed to petitioner for purposes of "dangerous offender" status. We must disagree. The state court of appeals rejected this argument in *State v. Johnson*, 605 S.W.2d 151, 154–55 (Mo.Ct. App.1980).

Accordingly, the judgment of the district court is affirmed.